## Phillips v. Phillips.

April 23, 1948.

218

H. R. Wilhoit for appellant.

Counts & Counts for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

Appellant, as plaintiff below, brought this suit for absolute divorce against appellee, defendant below, on the ground of six months' cruel treatment. By amended petition she sets out as an additional ground for divorce that appellee lived in adultery with another woman in Paris, France. In her prayer she asks recovery of $4600 which she claims belongs to her and which was taken from her by appellee, prays for alimony in the sum of $150 per month, her attorney's fee and restoration of her maiden name. Appellee denied the allegations of the petition and filed counterclaim against appellant for absolute divorce on the grounds of six months' cruel treatment.

On the issues thus made up considerable proof was taken on both sides and upon the basis of that proof the Chancellor gave a written opinion and entered judgment thereon which we copy in full:

"It is with genuine regret that this chapter must be written about a marriage which promised so much. Its tragic end appears to be another war, housing shortage and after the war new social order, casualty. Both of these young people are from excellent families and both enjoy the good opinion of those with whom they mix and mingle. They each took part in and seemed to enjoy the customs and practices of their social set, which to some may not appear orthodox. For example defendant's attorney was anxious to inform the court, in his argument, that they had shown in the evidence that plaintiff had kissed different men not for the purpose of showing her to be a bad woman but to show the customs and practice in their particular circle and plaintiff's attorney was just as quick to express his belief that Mrs. Henthorne was a good woman.

"Both of these parties are college graduates, intelligent and as far as the record shows are now in good health. Plaintiff is 30 years of age and a school teacher by profession; defendant is an insurance salesman. Both at the present time are making approximately the same amount of money.

"The evidence shows that at the time of the separation plaintiff had between $800.00 and $900.00 in cash and $525.00 worth of bonds; that defendant had $1400.00 in his own name and $3,400.00 in his mother's name which belonged to plaintiff and defendant. In addition there was an automobile valued at $1,700.00 and household goods valued at or which cost $1,800.00.

"Without going into detail, the court is clearly of the opinion that plaintiff is not entitled to a divorce on her amended petition which charges adultery, first because this charge was not proved as provided by law and secondly after knowledge plaintiff condoned the alleged offense by cohabiting with defendant as his wife.

"This leaves only the charge of cruel and inhuman treatment to be considered. After reading and re-reading and after hearing arguments of counsel for both parties and considering the evidence in the light of the customs practiced by these parties, the court seriously doubts whether any divorce at all should be granted and would not do so but for the fact that both parties are asking for one and there are no children and plaintiff has seen fit to leave a second time thereby showing determination to end their marriage relations.

"There are a great many leading questions, opinions and conclusions on both sides in this record but, few, if any facts to support the charge of cruel and inhuman treatment. The Court is of the opinion that if the charge of neglect and indifference is sufficiently proved in this case to warrant a divorce then there would be very few marriages that would stand the test. But in view of the insistence of both, the Court has decided to grant the divorce and divide their property as nearly equal between them as practical and then let each go their own way as they seem anxious to do and as each appears able by education, intelligence and experience to make their mark in the world.

220

"It is, therefore, ordered and adjudged by the court that the plaintiff and the defendant be and they are hereby divorced from the bonds of matrimony and each is restored to all the rights and privileges of unmarried persons.

"It is further adjudged by the court that plaintiff shall have the right and privilege of taking for her own either all the household goods or the automobile and whichever she selects will be hers and the other shall be the property of defendant. As plaintiff already has in cash and bonds the sum of at least $1325.00, it is adjudged by the court that defendant pay to the plaintiff out of the money deposited in his mother's name in the Peoples Bank of Olive Hill, Ky. the sum of $1738.00 dollars. It is further adjudged that defendant pay the cost of this action including an attorney fee of One hundred and fifty dollars for all of which plaintiff may have execution and this cause is stricken from the docket, the papers filed away and the parties hence dismissed. Plaintiff excepts 'To so much of the judgment as fails to restore to plaintiff or award her recovery for all of the money and property obtained from her by the defendant, and denies the claim of plaintiff for monthly alimony in the amount of $150.00 per month, and prays an appeal to the Court of Appeals of Kentucky, which is granted."

Since we have no authority to question the action of the Chancellor in granting the divorce, it would serve no useful purpose to review the voluminous testimony by which he reached that conclusion. The only questions involved in this appeal are the question of alimony, the settlement of property rights between the parties and the restoration of appellant's maiden name. We have carefully read all the testimony in order to determine whether or not the Chancellor reached the right conclusion and made a fair and equitable distribution of the property between the parties and whether or not appellant is entitled to any alimony as claimed. The principal sum involved in this dispute is the $3400 now held by appellee in his mother's name. This represents a balance of an original sum of $4400 which appellee sent back to his wife, the appellant, in the form of an allotment of $200 per month for a period of 22 months while he was stationed overseas as an officer

in the late war. This was not an allotment such as an enlisted man makes to his dependents with the government contributing part and the soldier part. It was simply a voluntary allotment made by appellee out of his officer's pay so that the money would be returned to this country for savings and support of his wife to the extent needed. Appellant deposited this money in her name at the local bank and it must be said to her credit that she spent none of it on herself, even for living expenses, but supported herself from money which she made teaching school and by other work, leaving the full sum of $4400 intact. Upon his return, at his request, she gave him $1000 of this money and apparently that amount went into the purchase of the automobile referred to in the judgment above. When the separation occurred, appellant had the balance of this money placed in the name of her sister and appellee obtained the money from that sister by a not very commendable ruse and had it placed in his mother's name, where it now is. Clearly both transactions, that from appellant to her sister and that from appellee to his mother, were for the purpose of preventing an accounting for this sum in the settlement of property rights between the parties. Appellant strongly contends that all of this $4400 belongs to her as a gift from her husband in the form of an allotment made to her for living expenses. Appellee contends all of this sum belongs to him as savings out of his salary which he sent home to be held for his future use and that he never considered the $4400 as a gift to his wife. We cannot agree with appellant's contention that this money belongs to her merely because it was placed in her name as the allotments were sent home from her husband's earnings. Certainly it was property she obtained from her husband during the marriage and in consideration thereof within the meaning of KRS 403.060. Such part of it as was given to the wife by the Chancellor was justifiable as lump sum alimony, which we construe the division of this fund by the Chancellor to be.

On the whole case we believe the Chancellor reached a fair and reasonable solution on the question of the property rights and alimony and one which the parties themselves could well have reached in any sort of proper spirit of settlement and compromise if such had been

genuinely attempted. Courts are always open for those who insist on fighting to the last ditch for all they think they are entitled to but experience has shown that a settlement of monetary differences in a spirit of give and take often produces better results.

In his judgment the Chancellor did not pass on the question of the restoration of her maiden name to appellant although it was prayed for in her petition. We believe this to have been an oversight on his part. KRS 403.060(4) very clearly provides for this and this court held in Rayburn v. Rayburn, 300 Ky. 209, 187 S. W. 2d 804, that even where divorce was granted to the husband, the wife could be restored to her maiden name if she asked it. Although appellant in her brief still insists on this restoration, no specific exception was taken to the failure of the judgment to include this restoration. We will, therefore, not reverse the judgment on that ground but with the return of the case, the Chancellor should modify his judgment in this respect or it can be done by agreed order since there appears to be no objection to the restoration.

Judgment affirmed.