## Moore v. Moore.

May 25, 1948.

Carl D. Perkins for appellant.

Dan T. Martin for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

Appellant filed this action against appellee for divorce and custody of the infant children of the parties;

appellee counterclaimed, praying for divorce, custody of the children, alimony, maintenance for the children, and the sum of $1500.00 in lieu of her interest in land described in the petition; she likewise prayed for possession of all the household furniture and belongings, and for $500.00 allegedly expended by her on repair of the buildings and real estate mentioned, and $250.00 allegedly paid by her on indebtedness for appellant. The Chancellor granted appellee a divorce; awarded her the household furniture and $1000.00 as the equivalent of her interest in the real estate, the title to which was recorded in appellant's name; awarded the custody of the older child to appellant, and that of the younger to appellee; he awarded appellee the sum of $20.00 per month for the maintenance of the younger child. Appellant has appealed from so much of the judgment as awards appellee $1000.00 as the equivalent of her interest in the real estate, and as denies him the custody of the younger child, and that part of the judgment allowing maintenance for the younger child. Appellee has not cross-appealed.

The parties were married on October 7, 1939. There were two children born to the union, the elder of which is a boy now approaching seven years of age, and the younger a girl five years of age. Appellant obtained a position in a shipyard in Newport News, Virginia, in the latter part of 1942 or the early part of 1943; appellee accompanied him to that place. In the year 1944 she instituted an action for divorce, but withdrew it thereafter; and in that year he was inducted into the military service of the United States, from which he was discharged in the early part of November, 1946. Before entering the armed services he contracted a venereal disease, which appellee testified was communicated to her by him. His testimony on this and other pertinent questions is as follows:

"Q. Have you since your marriage to Bessie, your wife, lived with or cohabited with any other woman up to the present time? A. Yes, I have.

"Q. When was the last time you did that? A. Before going into the army or after coming back?

"Q. Any time, the last time. A. The last time was about four or five days ago.

554

"Q. Before you went into the army you say you also stepped out on your wife? A. A little bit, yes.

* * * * * *

"Q. Did you contact a venereal disease while you were out fooling around with other women at any time after your marriage? A. Yes I did.

"Q. Did you give that disease to your wife? A. I don't know whether she had it exactly or not. She said she did.

"Q. Do you know what woman you caught that from? A. No, I don't know exactly."

He was asked the following questions and gave the following answers:

"Q. Did you discharge a pistol since you and your wife have been married and shoot her? A. I did not shoot her. I was drinking and the gun, an automatic, accidentally went off in the grate while I was fooling with it.

"Q. Did the bullet or any portions of it hit her? A. Not to my knowing.

* * * * * *

"Q. Did you ever strike her or abuse her? A. Not without cause.

"Q. Did you ever hit her with your fist? A. I never did hit her. I have slapped her face with my open palm.

"Q. Have you done that on different occasions? A. Yes."

In speaking of the occasion upon which the gun was discharged "in the grate," appellant was asked the following questions and gave the following answers:

"Q. Were you drunk there? A. I wasn't drunk but I was under the influence of alcohol.

"Q. You have been rather cruel to your wife on occasions haven't you, Wesley? A. No more than she has mistreated me.

"Q. Do you think it is odd or that it is strange that your wife should refuse to live with you after

you have contacted venereal disease, after you had slapped her on several occasions and after you had been out having sexual relations with other women? A. Yes because this all happened before my going overseas.

"Q. And you thought that going overseas would fix it all up? A. No, we had made up and she was living with me.

"Q. But now you tell the court that you have started in doing the same thing since you returned from overseas is that right? A. Yes I have some times when I was drunk. She seemed to love me and came to Fort McClellan when I was in boot camp. She came to see me and slept with me there."

We will not detail the evidence which appellant relies on to sustain his charge that appellee is not a fit person to have the custody of the children. Suffice it to say that, to our minds, it is sufficient to convict her of lewd and lascivious behavior during the time appellant was assigned to overseas duty. The case presents a very difficult problem in respect to the question of the proper person to have the custody of the children born to this union. We are convinced that the home of the paternal grandparents is sufficiently wholesome to accord them the custody, were it not for the fact that the paternal grandmother is bedfast and her impending death has been predicted. It may be, and it is our fervent hope that it is, possible for the mother of these children to realize her responsibility to them, and to conduct herself accordingly. Neither of the children has arrived at an age where the conduct of either of the parents will make any material impression upon his or her character or conduct. Therefore, we believe that the Chancellor's decision in respect to the custody of the children should not be disturbed at this time. But, as in all cases involving the custody of children, the Chancellor will have the power to reopen the case, take evidence in respect to conditions at the time of reopening the case, and make such an award of custody as the circumstances demand. It may be that the Chancellor, in the exercise of his discretion, should refer this case to the Department of Welfare for an independent investigation. We make this statement in view of the

fact that we are not satisfied that the welfare of either of these children will be served best by remaining in the custody of either of the parents, if they continue to conduct themselves as the evidence in this case shows they have done in the past.

We are not disposed to disturb the Chancellor's finding that appellee has accumulated an interest in the real estate recorded in appellant's name in the sum of $1000.00. This interest was acquired by her by reason of certain payments she made in the reduction of a mortgage on the real estate while appellant was serving in the armed forces. It is true that the payments were made out of an allotment she received, but the allotment was made to her by law and became her property. Appellant does not argue that $20.00 per month is an excessive allowance for the maintenance of the younger child.

The judgment is affirmed.