## WILCOX v. WILCOX.

Court of Appeals of Kentucky.

March 19, 1954.

V. R. Bentley, Pikeville, for appellant.

Francis M. Burke, Pikeville, for appellee.

STANLEY, Commissioner.

In cross-actions for divorce and restoration of property obtained during the marriage in consideration thereof, KRS 403.-060, the chancellor awarded the divorce to the wife, Mrs. Mabel Wilcox, from R. P. Wilcox. He found that two pieces of real estate, title to which was held jointly, had been acquired through their joint earnings and savings and that each was entitled to retain his or her half interest therein, and be equally liable for a mortgage thereon. The right to occupy the home was given the wife, but she was required to pay the husband $25 a month for rent of his half interest. The furnishings were divided between them equally and Dr. Wilcox was given a 1947 Buick automobile. He retains the equipment of his office as an optometrist and she keeps her photograph studio. A fee of $400, to be taxed as costs, was adjudged against the husband and directed to be paid to the wife's lawyer.

The husband contends on his appeal that he should have been awarded the divorce on the ground of abandonment and should have the entire title to the real estate, the equipment of the photograph studio and adjudged recovery of $1,000, which he had given his wife. The wife contends on her cross-appeal that she should be awarded the automobile, should not be required to pay any rent, and that the husband should be adjudged to pay $1,750 and she $400 balance on the joint note and mortgage.

These parties were married in December, 1940. Each of them had three young children by former marriages. At the time, Dr. Wilcox was practicing his profession of optometry at several places, and she was employed in a restaurant at Jenkins and also had a small photographic business. They moved to Pikeville, and after special training, Mrs. Wilcox set up a photograph studio. Both were industrious and accumulated and mixed their savings. A home was acquired for a cash consideration and a series of notes, likewise, some property outside of Pikeville, the unsold portion being worth about $1,000. Their earnings were placed in a bank account in

the name of Dr. Wilcox, but it was recognized to be joint and each drew checks thereon. In 1944 Mrs. Wilcox opened her individual account. The parties seem to have got along amicably until early in 1950 when they separated. A divorce suit was filed but a reconciliation had about six months later. At that time, $2,500 was borrowed on a mortgage on their home, the proceeds of which went to pay off an accumulation of debts, principally business obligations of Dr. Wilcox. He suffered a paralytic stroke about a year later and was totally incapacitated two or three months. He is still a sick man but carries on his business. She continues to operate her studio.

Notwithstanding the arguments, we are not concerned with the question of which of these parties was entitled to the divorce or with the matter of comparative rectitude or fault since the wife has waived any claim to alimony. As to the $400 attorney's fee, we need say only that since it was allowed to the lawyer personally and he is not a party to the appeal, we may not consider it. See Rose v. Rose, 302 Ky. 658, 195 S.W.2d 269.

During the years when harmony prevailed between this man and wife, they joined in maintaining and rearing their two respective groups of children. They were helpmates also in their respective business adventures. There was a community of effort to earn and to save money with little or no effort to keep their shares separate. They put title to the real estate in themselves jointly. It does appear that checks for the initial and some later payments for the property were drawn by Dr. Wilcox individually. The same may be said as to many checks drawn by Mrs. Wilcox, although perhaps the greater sum was earned and contributed by the husband. The reason for having the property deeded to them jointly was, as Dr. Wilcox expressed it, "I just thought we would live our lives together and never have any trouble." And at another place in his testimony, "We were good pals then."

98

When the matrimonial bark encountered rough sailing, as is usual under such conditions, incidents of conduct and the amount of contributions to the joint and mutual treasury were magnified out of all proportion to their real significance and importance. The record of the lives and business relations of this man and woman must be looked to as a whole. They so mixed and confused their financial affairs that the court ought not to be expected to unscramble the omelet. The chancellor, it seems to us, has made as fair and equitable division as it is possible to make. We are certainly not shown that it is otherwise.

The judgment is affirmed on both the original and cross-appeals.