Richard H. THOMAS, Appellant,

v.

Stella THOMAS, Appellee.

Court of Appeals of Kentucky.

May 29, 1964.

Joseph J. Leary, Marion Rider, Frankfort, R. Howard Smith, Newport, for appellant.

Morris Weintraub, Odis W. Bertelsman, Newport, for appellee.

DAVIS, Commissioner.

This appeal involves postdivorce litigation concerning the property rights claims of the husband and wife. We shall refer to appellant as husband, and to the appellee as wife.

The Campbell Circuit Court rendered judgment directing the husband to deliver to the wife one-half of the preferred and common stock in Dependable Loan Service, Inc. (hereinafter referred to as Dependable), plus one-half of the dividends paid on the stock, with 6% interest, from the times of payment. The judgment recites that the value of the common and preferred stock and the dividends awarded to the wife is $50,000. By the judgment it was provided further that should it develop that the value of the stock when delivered to the wife had fallen below $50,000, the husband should pay the wife a sum sufficient to supply the deficiency.

These litigants were married in 1935, when neither of them had any estate, although both were then employed. The wife ceased her employment, about eighteen months after their marriage, but resumed work during the war while the husband was

in service. Upon the husband's discharge from service the wife again resumed her role as housewife. They had no children.

The parties separated in April, 1949. No divorce action was instituted until July, 1954, when the husband sought divorce in the Campbell Circuit Court, alleging that the parties had lived apart without cohabitation for five years next before the suit. KRS 403.020(1) (b). The divorce complaint alleged, and it is admitted in the record by both parties, that the wife was then a resident of Ohio; her specific street address was stated correctly in the complaint. Warning order was issued, and a warning order attorney was duly appointed, who notified the wife of the nature of the action. The wife consulted Hon. Morris Weintraub, an attorney in Newport, but she did not enter her appearance or otherwise "appear" in the divorce action.

There were conferences between Mr. Weintraub and Hon. R. Howard Smith, the husband's attorney, and negotiations were had looking toward a property settlement. No settlement was reached. There is sharp dispute between attorneys Smith and Weintraub as to whether they had agreed that no step would be taken in the divorce action except upon appropriate notice to the other.

For some reason not shown in the record, the divorce action lay dormant from 1954 until 1960. However, in February, 1960, the husband's attorney, Smith, moved the Campbell Circuit Court for trial of the divorce case, and undertook service of notice of such motion by serving copy thereof upon the warning order attorney and by leaving a copy with the Campbell Circuit Clerk. Of course, the service of notice upon the warning order attorney was a nullity; leaving a copy with the circuit clerk was likewise unauthorized, since it is clear that the husband then knew the exact address of the wife in Ohio. CR 5.02. Hence, there can be no question of estoppel.

Mr. Smith did relate to the trial judge that he had had some conferences with Mr. Weintraub, but assumed that Mr. Weintraub no longer represented the wife. Thereupon the trial court heard the divorce action, and awarded an absolute divorce to the husband. In the divorce judgment it was provided that each of the parties should restore to the other any property which either had obtained from the other during or in consideration of marriage, not otherwise disposed of at the time the suit was filed. KRS 403.065. The divorce judgment made no other reference to any property rights of the litigants.

Slightly more than sixty days after the entry of the divorce judgment the husband mailed the wife a copy of the decree. Thereupon she reported the matter to Mr. Weintraub. He expressed shock. Shortly thereafter the wife filed in the divorce action, upon due notice, her "Petition for Restoration of Property." By it the wife asserted that the husband had in possession 620 shares of common stock and 25 shares of preferred stock of Dependable. The petition alleged that the husband obtained the stock from the wife "in consideration of, by reason of and during the marriage which existed" between the parties, and before the judgment of divorce. The petition also charged that the husband had "collected and converted to his own use" all of the dividends paid on said stock, and that the wife was entitled to an accounting for the dividends. By its prayer, the petition sought the court's order requiring the husband to transfer the stock to the wife, plus an accounting for all dividends on the stock.

The record is extensive and contains much that has no place in an orderly court procedure. However, in summary, the contention of the wife is that she and the husband had planned together the project of establishment of a self-owned finance company business. The husband was engaged in that type work, but was subject to contract prohibiting his entering a competitive employment for a time. Because of this contractual inhibition of the husband's

open participation in the new business, one-half of the stock of the newly formed Dependable was placed in the name of A. B. Cook, Trustee. The other half of the stock was issued to a cofounder of the company, Puttman, except that one share was issued to Mrs. Puttman.

The original capital of Dependable was $20,000. Puttman supplied one-half; the other half was supplied as the proceeds of a $10,000 loan obtained on a note signed by the husband, the wife, and the father of the husband. This note was ultimately discharged, in the main, from proceeds of an account in a Thrift Club. There is evidence that the wife made some personal contributions to the Thrift Club account. Appellant insists that her contribution was only $800; her assertions are quite to the contrary. We do not reach the intricate accounting questions involved in solution of that problem for reasons now explained.

■■ It is our view of the record that the wife has not established a partnership, nor a *quasi* partnership which would entitle her to half of the Dependable stock. Neither do we think the evidence warrants a finding that the Dependable stock was "obtained" from the wife by the husband during marriage, and in consideration of marriage. Here the wife did not participate in the operation and development of the business at all. It is true that she did contribute some of her individual funds to the Thrift Club account, and she did cosign the $10,000 note whereby the original capital was obtained. Cases of this nature turn primarily on the individual facts in each, so that precedents generally are not conclusive. The parties have cited and we have considered Rayborn v. Rayborn, Ky., 329 S.W.2d 576; Kivett v. Kivett, Ky., 312 S.W.2d 884; King v. King, 214 Ky. 171, 283 S.W. 73; Pearson v. Pearson, Ky., 350 S.W.2d 141; Stubblefield v. Stubblefield, Ky., 327 S.W.2d 24; Patterson v. Patterson, Ky., 266 S.W.2d 91; Wells v. Wells, Ky., 293 S.W.2d 718; Johnson v. Johnson, Ky., 255 S.W.2d 610; Fain v. Minge, 241 Ky. 131, 43 S.W.2d 504; Wilcox v. Wilcox, Ky., 266 S.W.2d 96; Gentry v. Gentry, Ky., 318 S.W.2d 870; Ritchie v. Ritchie, 311 Ky. 569, 224 S.W.2d 648; Whitney v. Penick, 281 Ky. 474, 136 S.W.2d 570; Power's Adm'r v. Wiley, 241 Ky. 645, 44 S.W.2d 591; Harlan Fuel Co. v. Wiggington, 203 Ky. 546, 262 S.W. 957; Simpson v. Simpson, 145 Ky. 45, 139 S.W. 1100; Walter v. Moore, 198 Ky. 744, 249 S.W. 1041; Sandusky v. Sandusky, 166 Ky. 472, 179 S.W. 415; Tutt v. Tutt, 304 Ky. 480, 200 S.W.2d 924; Fearington v. Fearington, 306 Ky. 220, 206 S.W.2d 927; Moore v. Moore, 307 Ky. 552, 211 S.W.2d 852; Bohannon v. Bohannon, Ky., 249 S.W.2d 544; Ball v. Ball, Ky., 317 S.W.2d 870; Eckhoff v. Eckhoff, Ky., 247 S.W.2d 374; and Phillips v. Phillips, 307 Ky. 217, 210 S.W.2d 756. It would unduly extend this opinion to undertake a discussion of each of the cited decisions. However, we are not persuaded that any of them completely rules the instant case.

During a portion of the oft heated discussions between counsel, the following occurred before the introduction of evidence:

Mr. Bertelsman: " * * * we will ask for periodic payments of alimony, in addition to her getting her 620 shares of stock, or whatever that has amounted to. This should be considered a proceeding for the payment of alimony."

Mr. Smith: "Let's keep it that way."

■ Counsel appear to have "kept it that way." Throughout the record each side presented evidence touching on the relative fault of the husband and wife as contributing to the divorce. Much evidence was heard relating to the mutual efforts of these parties, and their counsel, looking toward property settlement. The income tax returns of the parties were sought, although they were not available for all years. The net worth of the husband was explored. The trial court found as fact that the value of the Dependable stock held by the husband "is in excess of $150,000." Yet, the lower

court found the wife is entitled to have stock of the value of $50,000. The trial court's findings of fact and conclusions of law appear to be based on his holding that the wife is entitled to one-half of the Dependable stock. This determination was rested on a finding by the chancellor that there was an agreement between the husband and wife that each would own one-half of Dependable's stock. We feel that this finding is not sufficiently supported by the record. Manifestly, the $50,000 evaluation of the wife's share is inconsistent with a finding that she is entitled to one-half of stock valued at $150,000. We hold that the findings of the lower court are clearly erroneous. CR 52.01.

We are mindful of the statement in Hughes v. Hughes, 211 Ky. 799, 278 S.W. 121, to the effect that there may be no claim for alimony after an absolute divorce. It must be remembered that the Hughes case reflected the then prevalent attitude that "fault" on the part of the wife was an absolute bar to alimony in her behalf. The Illinois judgment found "fault" in the wife, and this was held to be res judicata of the question under the full faith and credit clause of the United States Constitution. The fundamental soundness of the ruling that a wife's claim for alimony can be barred in an action in which she is before the court only by constructive service is questionable. Nevertheless, we need not reconsider it here, since subsequent decisions of this court clearly show that we have departed from the "fault" theory as a determinative absolute in divorce actions. Heustis v. Heustis, Ky., 346 S.W.2d 778; Coleman v. Coleman, Ky., 269 S.W.2d 730.

Moreover, we have decisions permitting alimony adjudication, even after divorce, in circumstances comparable to those in the case at bar. See Davis v. Davis, Ky., 303 S.W.2d 256; Reynierson v. Reynierson, Ky., 303 S.W.2d 252; Taylor v. Taylor, Ky., 242 S.W.2d 747; and Cooper v. Cooper, Ky., 314 Ky. 413, 234 S.W.2d 658. It is quite clear in this record that there were numerous discussions between the husband and wife, as well as between their attorneys, wherein the matter of property settlement was discussed. It is not disputed that the husband had made overtures of lump sum settlement of property matters. In his opening remarks to the court in the divorce suit, Mr. Smith related that he had had communication with Mr. Weintraub, but expressed the thought that Mr. Weintraub had abandoned the case. Very shortly after the wife was informed of the entry of the divorce judgment she filed her petition for relief. In light of Mr. Smith's disclosure to the trial court, we do not hold that actual fraud was practiced on the wife or her attorney, but it may not be doubted that there was a misunderstanding of such magnitude as to make it inequitable (even if it be legally possible) to foreclose the wife's rights to litigate the property questions.

The wife placed a specific label on her petition—calling it a "Petition for Restoration of Property." However, the prayer of that pleading concluded: " * * * and petitioner prays for all proper and equitable relief to which she may be entitled." As noted, when the wife's attorney stated that this proceeding should be regarded as one for alimony the husband's attorney retorted, "Let's keep it that way." We do.

 It is fundamental that once equity has assumed jurisdiction for one purpose it will retain it for all purposes connected with the principal controversy. Swaim v. Martin, 302 Ky. 381, 194 S.W.2d 855; 30 C.J.S. Equity § 67, p. 414. In Swaim we observed that this is especially true where there is a general prayer for all equitable relief. CR 54.03 directs that every final judgment shall grant the relief to which the successful party is entitled, even if the party has not demanded such relief in his pleadings. In Clay, CR 54.03, Author's Comment 3, it is noted that it is no longer necessary that the party shall have demanded "all proper and general relief."

**748**

CR 15.02 provides that the trial of issues not raised by the pleadings, when done by the express or implied consent of the parties, shall be treated in all respects as if raised by the pleadings. From what we have said it is clear that these litigants did, expressly, treat the issue of alimony as raised, and they addressed proof looking toward adjudication of that issue.

■ There is not sufficient evidence in this record, however, to permit this Court to make an informed determination of the amount of alimony. It is our judgment that the trial court shall permit the parties to adduce proof as to the actual net worth of the husband, the financial circumstances of the wife, the factors contributing to their divorce, and fix alimony, if any, in an equitable amount. KRS 403.060(1). See Goldstein v. Goldstein, Ky., 377 S.W.2d 52, wherein the undesirability of splitting closely held corporate stock is discussed.

The judgment is reversed for proceedings consistent with this opinion.