**COMMONWEALTH of Kentucky, DEPARTMENT FOR HUMAN RESOURCES, Movant,**

v.

**KENTUCKY PRODUCTS, INC. and Floyd K. Nixon, Respondents.**

Supreme Court of Kentucky.

May 26, 1981.

Paul Fauri, Gen. Counsel, Terry, L. Morrison, Frankfort, for movant.

Donald A. Jones, Murray, for respondents.

STERNBERG, Justice.

This is an action growing out of an alleged violation of the Kentucky Food, Drug and Cosmetic Act (KRS 217.005 to 217.215). The Department for Human Resources is charged with the duty of and has the responsibility for enforcing the provisions of the Act. Kentucky Products, Inc., is a Kentucky corporation doing business as a manufacturer and wholesaler of foods. Floyd K. Nixon is its President. On August 29, 1979, the Department filed a "Complaint for In-

junction" against Kentucky Products, Inc., and Floyd K. Nixon, its President, in the Calloway Circuit Court. The demand of the complaint is that the corporation and Nixon be temporarily and permanently restrained and enjoined from producing, packing or offering for sale any item of food until such time as they eliminate the conditions described in the complaint and are found to be in compliance with the Act. The issues which were made by a traverse of the charges made in the complaint and by a plea to the jurisdiction of the circuit court were tried to the court on September 24, 1979. On October 12, 1979, the trial court filed findings of fact and conclusions of law and entered the following judgment:

"It is, therefore, the JUDGMENT of this Court that the proceedings by the plaintiff to condemn and force the destruction of the packaged products belonging to the defendants under the act of quarantine of the State on August 31, 1979, is denied, and said products are by this judgment to be released to defendants free from said quarantine; with the further provision, however, that this judgment with reference to said quarantined items is not to be effective for a period of ten (10) days following the date of this judgment in order that the plaintiff may appeal from this adjudication.

It is further the JUDGMENT of this Court that defendants are permanently enjoined from operating or maintaining their manufacturing establishment in any manner which is violative of the provisions of Chapter 217 of the Kentucky Revised Statutes or the rules and regulations promulgated thereunder by the Department for Human Resources of the Commonwealth of Kentucky."

The judgment of the circuit court was appealed to the Court of Appeals of Kentucky where the following issues were presented:

1. Did the circuit court have jurisdiction over the subject matter of this action?

2. Did the Commonwealth prove that the food product was adulterated?

In disposing of these issues, the Court of Appeals wrote:

"The appellee herein having raised the question and the Court being of the opinion that the Calloway Circuit Court was without jurisdiction to hear this matter with the statute specifically requiring that jurisdiction over this subject matter be in the district court, the judgment herein is set aside and held for naught for lack of jurisdiction."

This court granted review on December 9, 1980, 609 S.W.2d 367.

I.

DID THE CIRCUIT COURT HAVE JURISDICTION OVER THE SUBJECT MATTER OF THIS ACTION?

The Court of Appeals predicated its action on KRS 217.115(2) without taking into consideration KRS 217.205. Since this court is of the opinion that KRS 217.205 is dispositive of the issues, we need to compare them. They are as follows:

"KRS 217.115. Detention or quarantine of articles that violate KRS 217.005 to 217.215.

(2) When an article detained or quarantined under subsection (1) of this section has been found by such agent to be adulterated, or misbranded, he shall petition the judge of the district court in whose jurisdiction the article is detained or quarantined for an order for condemnation of such article; Provided That nothing in this section shall require that the department or its agent shall go to court if destruction of the quarantined article is accomplished by agreement made in writing with the owner of the property. When such agent has found that an article so detained or quarantined is not adulterated or misbranded, he shall remove the tag or other marking."

"KRS 217.205. Department's power to enjoin violations.—Notwithstanding the existence or pursuit of any other remedy (civil or criminal) the department may maintain, in its own name, an action to restrain or enjoin any violation of KRS

217.005 to 217.215, irrespective of whether or not there exists an adequate remedy at law."

■ It it clear to this court that KRS 217.115(2) provides a quick and speedy procedure for the specific and stated purpose of condemning adulterated or misbranded foods, drugs, devices or cosmetics that had been detained or quarantined by an agent of the Department for Human Resources pursuant to the authority of KRS 217.-115(1). Nowhere in the complaint other than in an affidavit which was filed as an exhibit is there any mention made of any article being detained or quarantined. As a matter of fact, the only relief that is sought by the demands of the complaint is that respondents be permanently restrained and enjoined from producing, packing, or offering for sale any item of food until such time that they eliminate the conditions described in the complaint and are found to be in compliance with the Act.

The question of disposing of detained or quarantined articles was presented to the trial court in the Department's motion for a restraining order filed on September 4, 1979; in respondents' motion to dissolve the restraining order and to release the quarantine filed on September 5, 1979; and in the Department's motion for a temporary injunction filed on September 12, 1979.

The concern of the Department does not stop with condemning, detaining or quarantining articles. It extends to the enforcement of all of the provisions of the Act. For example, it must concern itself with "When food deemed adulterated (KRS 217.-025);" "When food deemed misbranded (KRS 217.035);" "Unsafe food additives (KRS 217.045);" "When drug deemed adulterated (KRS 217.055);" "When drug or device deemed misbranded (KRS 217.065);" "Restrictions on handling of new drugs (KRS 217.075);" "When cosmetic deemed adulterated (KRS 217.085);" "When cosmetic deemed misbranded (KRS 217.095);" and "When advertising deemed false (KRS 217.105)." It is within the realm of reasonable expectation, with such a list of subjects confronting the Department, that at some time and at some place an inspector of the Department will find violations of the Act of such import that immediate action will be required to be taken to eliminate the difficulty.

The principal purposes of these proceedings are set out in paragraphs 3, 4 and 5 of the complaint, as follows:

"3. The defendants have consistently and repeatedly conducted their business in a manner which is in violation of the Kentucky Food, Drug, and Cosmetic Act, and have on numerous occasions produced, prepared, packed or held food under unsanitary conditions, whereby it may have become contaminated with filth, or whereby it may have been rendered diseased, unwholesome or injurious to health (KRS 217.025(1)(d); KRS 217.175(1)). The said unsanitary conditions have existed for a long period of time, and continue to exist, as shown by the attached affidavit, marked 'Plaintiff's Exhibit A,' hereby incorporated by reference.

4. The operation of the defendant's business in such an unsafe and unhealthful manner constitutes a serious and imminent danger to the health of the citizens and consumers of the Commonwealth whose interest the plaintiff represents.

5. The defendants have refused to permit the plaintiff's authorized representatives to inspect their premises, in violation of law (KRS 217.155; KRS 217.-175(6))."

■ These demonstrate the need for a procedure other than that provided by KRS 217.115(2) to permit the effective enforcement of the Act. Neither KRS 217.115(2) nor KRS 217.205 is antagonistic to the other. Each supplements the other, and each provides a remedy in addition to the other. In any action in the district court under KRS 217.115(2) we are faced with the constitutional guarantee of a right of appeal to the circuit court (Ky.Const. Sec. 115); consequently, on such appeals the circuit court would unquestionably have jurisdiction to provide the remedy set forth in KRS 217.-115(2). The primary purpose of this action,

but not the only purpose, is for relief pursuant to the provisions of KRS 217.205, not KRS 217.115(2). Injunctive proceedings are equitable in nature. *LaVielle v. Seay*, Ky., 412 S.W.2d 587 (1967). Once equity has assumed jurisdiction for one purpose, it will retain jurisdiction for all purposes connected with the principal controversy. *Thomas v. Thomas*, Ky., 379 S.W.2d 743 (1964).

It is patent that the circuit court had jurisdiction of the principal controversy; consequently, the circuit court having thus taken jurisdiction could exercise the provisions of KRS 217.115(2) so as to bring the action to a full and final conclusion.

## II.

## DID THE COMMONWEALTH PROVE THAT THE FOOD PRODUCT WAS ADULTERATED?

KRS 217.025 defines adulterated food. Sections (1)(c) and (1)(d) thereof are particularly applicable to this case. They are:

"KRS 217.025. When food deemed adulterated.—A food shall be deemed to be adulterated:

(c) If it consists in whole or in part of a diseased, contaminated, filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; or

(d) If it has been produced, prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered diseased, unwholesome, or injurious to health."

The trial court considered the quality and quantity of the evidence as it relates to both KRS 217.025(1)(c) and (1)(d). It concluded that as to (1)(c) "The State introduced no evidence that the product contained any diseased, contaminated, putrid substance, or was otherwise unfit for food." KRS 217.025(1)(c) occupies a double role of quality. They are joined by the disjunctive "or." In other words, if the article consists in whole or in part of a diseased, contaminated, filthy, putrid or decomposed substance, it is adulterated. On the other hand, if the article is unfit for human consumption for any other reason, it likewise is adulterated. The trial court erred in holding that an article containing diseased, contaminated, filthy, putrid or decomposed substance to be adulterated must result in its being unfit for human consumption, which is not the criterion. The evidence discloses that the agent for the Department testified that during the course of his inspections of the subject premises he found the following:

1. Two full 25-lb. boxes of Hershey's Cocoa containing beetle larvae.

2. One partial box of Hershey's Cocoa containing about 10 lbs. of product with a dead insect larvae in the ingredient.

3. 192 lbs. of Beef Summer Sausage and 48 lbs. of Kentucky Cold Pack Cheese Food with heavy mold-type growth.

4. 25 rodent fecal pellets in a rodenticide bait station at the south wall of the candy wrapping room.

5. 7 fecal pellets on a pallet housing powdered sugar.

6. Bales of sugar with bits of paint and debris.

7. Candy stored on the floor and against the wall.

8. Molded sausage and cheese products stored with saleable food products.

9. An uncovered cooking kettle containing syrup being heated over a low flame.

10. Mixers in the preparation area to have a *heavy grime buildup, indicating* inadequate cleaning.

11. Products or ingredients with bits of paint or plaster in them.

12. Raw sugar on the floor.

13. Dead insects on the inside of the cooking kettles.

14. Boxes of black walnuts with rodent gnawed holes and rodent excreta pellets on the exterior of some of the boxes.

15. 2,000 to 3,000 bars of candy with live insect activity in them.

The trial court, faced with this uncontradicted evidence, determined that the arti-

cles were not unfit for human consumption. The criterion, however, is not whether the articles were fit for human consumption. There can be no doubt but that the candy contained contaminated, filthy, putrid or decomposed substances which caused it to be adulterated.

Food is considered adulterated, pursuant to the terms of KRS 217.025(1)(d), "If it has been ... or held under insanitary conditions ...." Again, we note in this definition, as we did in KRS 217.025(1)(c), the use of the disjunctive "or," two separate conditions, either of which if existed would cause the product to be adulterated.

The trial court concluded that the Department had the responsibility to prove that the unsanitary conditions existed "when said product was produced, prepared or packed and have evidence that justifies an inference that unsatisfactory conditions existed at that time." That the articles were being held, and we emphasize being held, not produced, prepared or packed, under unsanitary conditions has no where in the record been disputed. The trial court recognized that the premises and buildings in which the candy was being prepared did not meet the standards of cleanliness and maintenance required by law.

■ The trial court made findings of fact relating to the applicability of both KRS 217.025(1)(c) and (1)(d), and this court will not disturb the findings of the court unless they are clearly erroneous. CR 52.01. However, the trial court predicated its findings on an erroneous construction and application of KRS 217.025(1)(c) and (1)(d). Consequently, the clearly erroneous rule does not apply.

We are of the opinion that the evidence was sufficient to clearly establish that the products come within the statutory definitions of adulterated foods, and the trial court should have so found.

The opinion and order of the Court of Appeals is reversed. The judgment of the Calloway Circuit Court, other than the injunctive portion thereof, is reversed, and this cause is remanded to the Calloway Cir-

cuit Court for the entry of a judgment in keeping with this opinion.

All concur except CLAYTON, J., who did not sit.