Gene M. COMBS, Appellant and Cross-Appellee,

v.

Manley COMBS, Appellee and Cross-Appellant.

Court of Appeals of Kentucky.

Sept. 4, 1981.

Discretionary Review Denied Nov. 17, 1981.

William H. McCann, Lexington, for appellant and cross-appellee.

James B. Stewart, White, McCann & Stewart, Winchester, for appellee and cross-appellant.

Before GANT, HOGGE and WILHOIT, JJ.

GANT, Judge.

Appellant/wife appeals from a judgment of the Clark Circuit Court fixing maintenance and dividing property, assigning as error (1) the amount and duration of maintenance; (2) method of division of the husband's vested deferred payment plan; (3) insufficient tracing of husband's nonmarital funds; (4) failure to credit wife for expenditure of nonmarital funds on behalf of the children. The husband cross appeals, urging that the wife was entitled to no maintenance and further attacks the award and method of paying attorney's fees, without naming the attorney as party to this appeal.

Gene M. Combs, the wife, and Manley Combs, were married September 3, 1949, the Decree of Dissolution herein being entered May 29, 1979. The judgment fixing maintenance and dividing property was entered August 28, 1980.

The wife began this almost 30-year marriage as a legal secretary, quitting work a short while after marriage to care for the home and for the three children of this marriage, who were born between 1951 and 1957. She returned to work in 1968, this time as a school teacher, in which capacity she is presently employed. Her salary as

such was about $10,000 in 1977 and $11,400 in 1978. In her proof it was uncontroverted that she needed and would have an operation within a short time for a tumor in her back and would require medical attention. She is 52 or 53 years of age.

The husband is 58 years of age, apparently in good health, and is vice president of East Kentucky Power Cooperative. The evidence discloses that, for the period of 1973 to 1976, the husband's wages were from $20,000 to $30,000 per year, while the wages of the wife ranged between $2,800 and $9,000 in that period. In 1977, the husband's wages rose to $46,000, and in 1978 to $47,100. This sudden raise was due to a change in the deferred payment plan. The husband further testified that he would get a 9% raise in 1979, the year prior to the maintenance award, and a cost of living raise in the ensuing years. For 1979, his salary would have been $51,339.

■ The judgment herein awarded the wife the magnanimous sum of $250 per month for a period of three years as maintenance, although adopting a Commissioner's finding that the wife did not meet the requirements of KRS 403.200 to "support continuing maintenance." We feel that the evidence herein fully supports continuing maintenance for the wife and that the award of $250 per month was grossly inadequate. As Commissioner Gardner wrote for the court in Walden v. Walden, Ky., 486 S.W.2d 57, 59 (1972), "At first blush we are impressed with the inadequacy ..." We will go on to say that at second blush, if such there be, we are impressed with the disparity between the positions in which the parties are placed as a result of this judgment. The husband will have an income of a minimum of $48,339 and the wife an income of $14,400. Her maintenance will be over $1,200 less than his cost of living increase.

■ We are aware that the fixing of maintenance is within the discretion of the trial court. See KRS 403.200(2), and Browning v. Browning, Ky.App., 551 S.W.2d 823 (1979). However, it is equally clear that the award may be reversed when,

as here, there is a clear abuse of that discretion. The disparity in financial position alone, under the circumstances of this 30-year marriage and the working of the wife, indicates an abuse of discretion. The elements contained in KRS 403.200(2), such as financial resources of the wife, standard of living established, duration of the marriage and ability of the husband, who got along well on $30,000 per year and now makes $51,000, to meet his own needs while meeting those of his wife, all point out the abuse.

■ The mere fact that the wife can eke out a living is not sufficient to deny maintenance. As Justice Palmore stated in Casper v. Casper, Ky., 510 S.W.2d 253, 255 (1974): "The statute, as did the law before, simply recognized that what might have been ample for a scullery maid is not necessarily sufficient for one accustomed to the lifestyle of a duchess ..." The court in Casper went on to say that the law did not intend "The anomaly that one who cannot work at all may have ... a better standard of living than one who is able to eke out the bare necessities of life." The antithesis of this was apparently the position urged by the cross-appellant herein and, to some extent, adopted by the lower court and its commissioner.

■ Nor can we condone the award of maintenance for a mere three years. The duration of maintenance must have a direct relationship to two factors: (1) the period over which the need exists, and (2) the ability to pay. Here there is no showing that the needs of the wife will be materially different after three years or that she will be more self-sufficient or even has the potential to become so. It is pointed out herein that she will be able to secure a Master's Degree, but the raise in pay attendant to that degree is seldom of such import as to materially affect her standard of living. We start with the presumption of maintenance for life or until remarriage. This may be rebutted, of course, but was not rebutted herein. See Frost v. Frost, Ky.App., 581 S.W.2d 582, 584 (1979).

It is our further opinion that the lower court erred in its postponement of benefits to the wife under the deferred compensation plan. We are mindful of our opinion in *Foster v. Foster*, Ky.App., 589 S.W.2d 223 (1979), but in that case there was simply no method by which the interest of the wife in the pension plan had a readily available means of payment. The holding in that case did not intend to deny any division of vested retirement pay in all circumstances. This was pointed out by the decision in *Light v. Light*, Ky.App., 599 S.W.2d 476 (1980), that each case be considered under its own circumstances. As stated in that case, at p. 479, "The settlement should be finalized as much as possible at the time of the divorce."

We find no fault with the evaluation of the deferred compensation plan. However, the 50% allocation to which the wife was held entitled should have been utilized in the division of the marital home. Under the judgment of the lower court, the home was valued at $90,000, $7,740 of which was declared to be the nonmarital property of the husband, the balance to be divided equally between the parties. The wife was given the option to purchase the one-half interest of the husband by paying to him one-half the value of the marital interest of $82,260, plus his nonmarital interest, or a total of $48,870. It is a simple matter to reduce the balance by the $14,000 interest of the wife in the deferred plan at this point and terminate that burr under the saddle. It could also be handled in the same manner if the wife did not choose to purchase the house and it was sold and the proceeds divided.

We find the other errors alleged by the appellant and the errors set out in the cross-appeal to be without merit.

Accordingly, this case is affirmed in part and reversed on the portions of the judgment establishing maintenance, both as to amount and duration, and further reversed on the disposition of the pension plan and remanded for further proceedings consistent with this opinion. The court having determined that the cross-appeal is without merit, it is affirmed on cross-appeal.

All concur.