William F. LEITSCH, Appellant/Cross–Appellee,

v.

Sharon Lowry LEITSCH, Appellee/Cross–Appellant.

Nos. 91–CA–2222–S (DIRECT), and 91–CA–2238–S (CROSS).

Court of Appeals of Kentucky.

Oct. 16, 1992.

Phillip M. Moloney, Lexington, Otis Doan, Harlan, for appellant.

Mark David Goss, Goss & Goss, Harlan, for appellee.

Before JOHNSON, McDONALD and STUMBO, JJ.

McDONALD, Judge.

The parties to this appeal, William Leitsch and Sharon Lowry, were married in 1978, at which time both were in college. They separated in 1989. The appellant, William, has suffered since birth from muscular dystrophy. At the time of the marriage he was confined to a wheel chair and Sharon admits she was aware then of the degenerative nature of this condition. Sharon performed many caretaking services for William during their eleven-year marriage not normally required by a spouse, including dressing and bathing William, moving him in and out of his wheel chair, cutting up his food, turning him over several times at night and percussing him frequently to prevent pneumonia.

Both parties finished college. William was able to work full-time as a claims adjuster for an insurance company for about ten years. Sharon worked also and additionally obtained two graduate degrees. Eventually, as was anticipated by both, William's condition progressed to the extent that he was prevented from working. It is not disputed that William is totally disabled and unemployable.

At the time Sharon filed for dissolution she was employed as a medical administrator at the Daniel Boone Clinic with annual earnings of $38,000. William's income consisted of $552 from social security disability and $445 from a disability insurance policy he had acquired from his employer. His monthly income totaled $997, or slightly under $12,000 annually.

William did not request maintenance in his response to the petition for dissolution; however, the case was practiced as though he had. He offered proof on the issue prior to the decree without objection. The decree of dissolution was entered October 9, 1989, and specifically reserved for future resolution William's claim for maintenance. The parties had almost no liquid assets to divide. Their household items, furniture and vehicles were fairly equally divided. William was awarded the marital home which the parties had purchased for $50,000 and had customized in certain respects to accommodate his physical condition. The decree also provided that he be required to assume the $45,000 outstanding mortgage on the property.

In September, 1990, William moved the court to decide the issue of maintenance. Sharon objected on the ground that William had not raised the issue in his pleadings. The court nevertheless heard further testimony of the parties' financial situation since the decree. William testified he had monthly income of $1,301 which, in addition to his disability benefits, included rental income of $265 per month. This rental income, he testified, was temporary. His necessary monthly expenses were nearly $1,900. His budget was fairly barebones with his biggest monthly expenditure, $600, going to attendant care. He testified that

he needed assistance around the clock on an at-call basis. The only "luxuries" in William's expenses included $19 for cable television, $14 for the newspaper, $104 representing his tithe to the church, and $78 for life insurance, items the parties had enjoyed during the marriage.

William testified that his situation was desperate and that the deficit in his income and expenses for essentials was being taken care of from gifts from relatives and friends, and assistance from church members. In addition, William informed the court that he had other financial needs not included in his budget that he could not afford including more frequent attendant services due to his worsened condition, counseling, and upkeep and repairs on his specially equipped vehicle which had been driven over 100,000 miles. He had no way of saving for emergencies or to replace his vehicle.

Sharon's employment at the Daniel Boone Clinic ended on November 2, 1990, and she immediately secured similar employment with better wages at Alliant Health System in Louisville earning $50,-000 per year. Sharon, who had remarried, listed monthly expenses of $2,525, including a house payment of $1,016 monthly. The record does not disclose whether any or all of the expenses are hers alone or whether her current spouse shares responsibility for maintaining their household.

Sharon did not challenge the reasonableness of William's expenses. She did argue that he was procedurally prohibited from seeking maintenance, alleging his pleadings to be inadequate, and in her brief before the trial court argued that William did not need maintenance, as follows:

> He [William] requested the house and voluntarily assumed the payments; other obligations have been paid in full, outside help apparently continues, and his overall financial situation appears to be quite sufficient, and, in fact, significantly better than that of petitioner [Sharon].

Despite the overwhelming disparity between the parties' financial situation and physical condition, the trial court agreed with Sharon's assessment of their respective situations. In denying William any maintenance, the court found that his "necessary living expenses, including mortgage payment and attendant care due to his muscular dystrophy" to be within his income of $1,301. The court, in so finding, reasoned that the $104 in William's budget for contribution to his church and the $78 for life insurance were not necessary expenses. The court also relied on the fact that William "receives a variety of assistance from friends, relatives and neighbors."

■ In his appeal William asserts the trial court abused its discretion. We agree that the failure to award William a sum sufficient to allow him to meet his needs without requiring that he depend on the generosity of family and friends was plainly an abuse of discretion. It has long been the law in this jurisdiction that the test to determine entitlement to maintenance set out in KRS 403.200(1) is not absolute but must be applied against the standard of living established during the marriage. *Combs v. Combs,* Ky.App., 622 S.W.2d 679 (1981); *Casper v. Casper,* Ky., 510 S.W.2d 253 (1974); *McGowan v. McGowan,* Ky. App., 663 S.W.2d 219 (1983); and *Atwood v. Atwood,* Ky.App., 643 S.W.2d 263 (1982).

The evidence in this record established that, while the parties did not build up a large marital estate, they did earn sufficient sums to finish college, to allow Sharon to attend graduate school for five years and to lead a comfortable life. They were able to afford a house, furnish the house, and to make improvement to the house to accommodate William's special needs. More importantly, the parties maintained a standard of living that allowed William to maintain his dignity despite his deteriorating and disabling physical condition.

■ The record discloses that since the dissolution William is barely getting by and is doing so only because of the charity of others. Even if one subtracts from William's budget items enjoyed during the marriage such as his life insurance premi-

ums, newspapers and cable television, William's expenses for the basics, that is, housing, utilities, food, clothing and attendant care, exceed his fixed income. William was not awarded income producing property nor any liquid assets to speak of. The court's finding that he can provide for his reasonable needs is thus erroneous as a matter of law and fact.

■ Sharon admits that William cannot work and she does not seriously contend that his income and property are adequate to meet his needs. She defends the trial court's ruling with the argument that if one subtracts from William's monthly expenses the cost of maintaining the debt on the house (roughly $511) which he asked to be awarded, the *remainder* of his monthly expenses fall within his $1,300 income. William asked for the house as it was equipped to meet his physical needs. His testimony that he could not rent an apartment adequate to accommodate his condition for less money than his house payment was not challenged by Sharon. That he asked to be awarded the house and agreed to take responsibility for the mortgage did not, as Sharon implies, constitute a waiver of his claim for maintenance.

■ It is not insignificant, we believe, that the parties knew at the outset of the marriage that William had a limited number of years to work, that his future was uncertain and that his condition would progress to deprive him of the ability to be self-supporting. The effect of the trial court's denial of maintenance is not merely to reduce William's standard of living while increasing that of Sharon, but is to reduce William to one dependent on the charity of others, in short, a burden on society.

■ The statutory scheme is designed to allow one to become self-supporting, *e.g.*, *Moss v. Moss*, Ky.App., 639 S.W.2d 370 (1982). While the trend is to sever all ties between divorcing parties, *see* R. Petrilli, *Kentucky Family Law*, § 25.11 (1988), where one is unable due to health problems to be self-supporting, the statute is appropriately utilized to prevent the "drastic change" in the standard of living experienced by William. *Atwood v. Atwood, supra*, 643 S.W.2d at 266, and *James v. James*, Ky.App., 618 S.W.2d 187 (1981). This case has many similarities to the situation in the *Atwood* case. Like the appellant in *Atwood*, William was left "holding the marital bag" while Sharon has a "well-paying job" and a new spouse to share her financial needs. As William points out, Sharon's graduate degrees were obtained with marital funds to prepare her for the day when she would be the primary supporter of the household. As we said in *Atwood*, "[t]he unfairness of this situation is evident." *Id.*

■ In her cross-appeal Sharon makes the meritless argument that William's request for maintenance was not properly raised and preserved. William clearly testified at the first hearing, without objection, that he had no choice but to ask for support. The decree specifically reserved the issue. The trial court's ruling that the issue was properly preserved is not erroneous. *See* CR 15.02; *Thomas v. Thomas*, Ky., 379 S.W.2d 743 (1964); and *James v. James, supra*.

Accordingly, the judgment of the Harlan Circuit Court denying maintenance to the appellant is reversed, and the matter is remanded for an award of permanent maintenance in such an amount sufficient to allow appellant to provide for his reasonable needs according to the standard of living established during the marriage.

STUMBO, J., concurs.

JOHNSON, J., concurs in result by separate opinion.

JOHNSON, Judge, concurring.

I concur with the result of remanding this matter for a proper determination of maintenance. However, since Sharon has raised the issue of William's fault in causing the dissolution of the marriage, in ordering the remand I think it should be made clear to the trial court that the award of permanent maintenance is to be made in

accordance with the relevant factors set out in KRS 403.200 and consistent with case law relating to fault, if any, of the party seeking maintenance. *Platt v. Platt,* Ky.App., 728 S.W.2d 542 (1987); *Chapman v. Chapman,* Ky., 498 S.W.2d 134 (1973).