Frank RUSSELL, Jr., Appellant,

v.

Julia RUSSELL, Appellee.

No. 92–CA–001741–MR.

Court of Appeals of Kentucky.

March 18, 1994.

S. Frank Smith, Jr., Bowling Green, for appellant.

John Geary Deeb, Bowling Green, for appellee.

Before LESTER, C.J., and JOHNSON and SCHRODER, JJ.

JOHNSON, Judge:

Frank Russell appeals from an order entered by the Warren Circuit Court upon dissolution of his marriage. He argues that the trial court abused its discretion in distributing the marital assets and debts as well as requiring him to pay permanent maintenance. The trial court's findings are not clearly erroneous and sufficiently support its decision. We affirm.

Frank and Julia Ann Russell were married on December 26, 1962. On May 30, 1991, Frank filed a petition for dissolution of marriage. Julia filed a response seeking a reconciliation conference, restoration to the parties' non-marital status, temporary and permanent maintenance and equitable distribution of the couple's assets. The Russells were unable to reach an amicable agreement regarding the division of certain assets, debts and maintenance. Consequently, a trial was held on January 29, 1992 and February 5, 1992 before the special domestic relations commissioner.

On May 8, 1992, the domestic relations commissioner tendered his report. In response, Frank and Julia filed exceptions. After conducting a hearing, the circuit court entered findings of fact, conclusions of law and a decree of dissolution in accord with the domestic relations commissioner's report. Pursuant to this order, the court distributed the couple's marital assets and debts and imposed an obligation upon Frank to pay Julia permanent maintenance. This appeal followed.

█ Frank argues that the trial court abused its discretion by making an inequitable distribution of the marital property. He maintains that the trial court erred by failing to equally divide the couple's marital estate.

█ There is not a presumption or requirement that marital property be equally divided in a dissolution of marriage action. *McGowan v. McGowan*, Ky.App., 663 S.W.2d 219, 223 (1983); *Quiggins v. Quiggins*, Ky. App., 637 S.W.2d 666, 669 (1982); and *Herron v. Herron*, Ky., 573 S.W.2d 342, 344 (1978). Marital property must be distributed in accord with KRS 403.190. Pursuant to this provision, the court must assign each spouse their non-marital property and then divide the couple's marital property in "just proportions," without regard to marital misconduct and in light of the following factors: each spouse's contribution to the acquisition of the marital assets, including homemaking duties; the value of each spouse's non-marital property; the duration of the marriage and the economic circumstances of each spouse at the time of distribution. KRS 403.190(1)(a)–(d). The standard of review is whether the trial court abused its discretion. *Herron, supra*, at 344.

The record indicates that the trial court considered the non-marital property awarded to each spouse; the duration of the couple's twenty-nine year marriage; Julia's contributions as a homemaker and Frank's income earning contributions. In addition, the trial court considered Julia's age and her disability as well as the couple's economic condition at the time of distribution.

Frank and Julia entered various stipulations to allocate many of their marital assets. The remaining assets were distributed by the court. In sum, the court found that Julia received a net value of $51,749.00 and Frank received a net value of $43,515.90 from the couple's marital estate. Although there is some dispute regarding these figures, it is not necessary for this Court to address that argument. The circuit court concluded that these provisions constituted a fair and equitable division of the couple's assets under KRS 403.190. The court's findings conform to the mandates of KRS 403.190 and clearly support the distribution of the couple's marital assets. We affirm.

█ Frank also argues that the trial court abused its discretion by holding him responsible for the bulk of the couple's marital debts.

Pursuant to the trial court's order, Julia assumed the mortgage on the marital home, $1,191.69, and the 1989 Dodge Dynasty, $2,310. Frank was incumbered with debts owed to Farm Credit Services, $19,468.88; Warner Fertilizer, $1,782.66; Farmer's Fertilizer, $2,001.78; Luther and Dorothy Barnett, $10,000; Samuel Taft, $700; Wanda Harrison, $700; and Earline Compton, $151.

The trial court's findings support its distribution of the Russells' marital debts. Specifically, the court divided the couple's marital debts in light of its distribution of the marital assets. *Spratling v. Spratling*, Ky.App., 720 S.W.2d 936, 938 (1986). Consequently, the trial court did not abuse its discretion. We affirm.

Frank also argues that the trial court abused its discretion by awarding Julia $500 a month in permanent maintenance. He argues that it is wrong to hold him in "involuntary servitude" for the remainder of Julia's life or until she remarries and that she has sufficient income to provide support for herself.

The amount and duration of maintenance is within the sound discretion of the trial court. *Gentry v. Gentry*, Ky., 798 S.W.2d 928, 937 (1990); *Combs v. Combs*, Ky.App., 622 S.W.2d 679, 680 (1981), *citing* KRS 403.200(2) and *Browning v. Browning*, Ky.App., 551 S.W.2d 823 (1977). It is within the trial court's discretion to terminate a maintenance award upon the recipient's "death or remarriage." *Van Bussum v. Van Bussum*, Ky.App., 728 S.W.2d 538, 539 (1987). Consequently, Frank's argument, regarding the term of Julia's maintenance, must be rejected.

KRS 403.200 provides that:

(1) ... [T]he court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for the party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

In *Perrine v. Christine*, Ky., 833 S.W.2d 825 (1992), the Supreme Court stated:

Under this statute, the trial court has dual responsibilities: one, to make relevant findings of fact; and two, to exercise its discretion in making a determination on maintenance in light of those facts. In order to reverse the trial court's decision, a reviewing court must find either that the findings of fact are clearly erroneous or that the trial court has abused its discretion.

833 S.W.2d at 826.

It is appropriate to award maintenance when a party is not able to support themselves in accord with the same standard of living which they enjoyed during marriage and the property awarded to them is not sufficient to provide for their reasonable needs. *Robbins v. Robbins*, Ky.App., 849 S.W.2d 571, 572 (1993); and *Atwood v. Atwood*, Ky.App. 643 S.W.2d 263, 265–66 (1982). Furthermore, where a former spouse is not able to produce enough income to meet their reasonable needs, it is appropriate to award maintenance. *Id.* and *Calloway v. Calloway*, Ky.App., 832 S.W.2d 890, 894 (1992).

In *Leitsch v. Leitsch*, Ky.App., 839 S.W.2d 287 (1992), this Court considered a similar factual scenario involving a former spouse who suffered from a disability precluding him from working or generating income sufficient

to meet his needs. The Court reiterated that "where one is unable due to health problems to be self-supporting, the statute is appropriately utilized to prevent the 'drastic change' in the standard of living experienced...." *Id.* at 290, *citing Atwood v. Atwood,* Ky.App., 643 S.W.2d 263, 266 (1982), and *James v. James,* Ky.App., 618 S.W.2d 187 (1981).

The trial court's findings specifically provided that Julia is disabled; she cannot work and the assets which she received in conjunction with her disability payments are not sufficient to maintain the conservative standard of living which she and her husband enjoyed during their marriage of almost twenty-nine years. Consequently, the trial court correctly concluded that Julia was entitled to receive maintenance.

 Finally, Frank argues that the trial court failed to consider his ability to pay maintenance under KRS 403.200(2)(f). Contrary to his argument, the trial court's findings address his economic ability. The court found that his gross wages were $2,105.06 per month and that he also earned an undetermined amount as a part-time farmer. The court also found that Julia did not work, due to a medical disability, and that she received $836.20 a month in disability benefits. Frank and Julia also submitted a record of their expenses which the court considered. The trial court awarded Julia $500.00 a month in permanent maintenance and provided that in the event that her disability income increased, that the increase would be offset against Frank's maintenance obligation.

In *Garrett v. Garrett,* Ky.App., 766 S.W.2d 634 (1989), the trial court failed to consider KRS 403.200(2)(f) when it imposed maintenance obligations upon an unemployed spouse. *Id.* at 636. The case *sub judice* is clearly distinguishable.

The trial court conformed to the requirements of KRS 403.200. A review of the record indicates that the trial court examined financial data submitted by Frank and Julia to determine the maintenance award. Furthermore, the financial records submitted to the trial court clearly indicated that Julia's expenses were significantly greater than her disability income. The court considered Frank's living expenses before determining his maintenance obligation. Consequently, the trial court's award is supported by its findings. We affirm.

The trial court conformed to the statutory requirements of KRS 403.190 and 403.200 in determining the allocation of the Russells' marital assets and debts as well as in awarding maintenance. The court's findings were not clearly erroneous and support its decision. Consequently, the trial court did not abuse its discretion, and we affirm.

All concur.