**Evelyn Marie CLARK, Appellant**

v.

**Adrian A. CLARK, Appellee.**

**No. 2005–CA–002502–MR.**

Court of Appeals of Kentucky.

Sept. 21, 2007.

Teddy B. Gordon, Louisville, KY, for Appellant.

Thomas M. Denbow, Louisville, KY, for Appellee.

Before ACREE, KELLER, and LAMBERT, Judges.

## OPINION

ACREE, Judge.

Evelyn Clark appeals from an order of the Jefferson Circuit Court terminating her marriage to Adrian Clark. Specifically, Evelyn takes issue with the portions of the dissolution decree assigning value to a 2002 Ford Taurus, declining to address the value of certain certificates of deposit and reducing her maintenance. We have reviewed the issues presented in the briefs and the evidence before the trial court and have heard oral arguments from the parties. Based on all of these factors, we affirm the trial court's decision with regard to the valuation and assignment of marital property, and we vacate and remand with regard to the maintenance award.

The parties were married July 1, 1985, and separated January 23, 2004. At the time of their divorce, Evelyn was seventy-years-old and Adrian was seventy-eight. Prior to their marriage, Adrian owned a home on thirty-six acres, free of encumbrance, one hundred fifty hogs and one hundred ten head of cattle. Adrian sold his livestock shortly after the marriage and purchased certificates of deposit with the proceeds of the sale. During their marriage, the parties lived on Adrian's social security and pension benefits and, once Evelyn reached sixty-two years of age, her social security benefits.

While Evelyn's dissolution petition was pending, Adrian was ordered to pay $300.00 per month *pendente lite* maintenance. The parties were able to agree on the division of most of their property, but there were disputes as to the marital or nonmarital character of the Ford Taurus, the certificates of deposit and Adrian's bank accounts.

The trial court conducted a trial on October 6, 2005, before entering an order containing findings of fact, conclusions of law and a judgment on November 8, 2005. The trial court found the Taurus to be marital property and awarded it to Evelyn with a value of $12,000.00. The certificates of deposit were neither assigned nor awarded since Evelyn failed to present any evidence that they existed at the time of the parties' divorce. Adrian's bank accounts were found to be marital property and divided equally between the parties. After dividing all marital property, the trial court reduced Evelyn's maintenance award to a monthly sum of $100.00.

Evelyn filed this appeal, raising issues concerning the valuation of the Taurus, the trial court's failure to award the certificates of deposit, and the reduction in her monthly maintenance payments. While this appeal was pending, Evelyn subpoenaed bank records, showing that Adrian cashed out several certificates of deposit in March 2004, two months after the couple separated. She then filed a motion, pursuant to Kentucky Rule of Civil Procedure (CR) 60.02(c), arguing that Adrian had perjured himself at trial by stating that the certificates of deposit no longer existed. At the same time, Evelyn filed a motion with this Court, which we granted, to hold her appeal in abeyance until the trial court ruled on her CR 60.02 motion.

The trial court conducted a hearing on Evelyn's motion on April 27, 2006. Its order denying the CR 60.02 motion was dated May 2, 2006. Subsequently, we returned the original appeal to our active docket on May 22, 2006. In our order, we specifically stated that issues related to the trial court's ruling on the CR 60.02 motion had to be raised in a separate, timely-filed appeal. Evelyn attempted to appeal from the trial court's order denying her CR 60.02 motion; however, her notice of appeal was not filed in a timely manner. Consequently, we dismissed the second ap-

peal, as required by CR 73.02(1)(a), by order entered September 26, 2006.[1] The original appeal from the trial court's November 8, 2005, judgment is currently before us.

Evelyn contends the trial court erred in its findings of fact regarding the car and the certificates of deposit and abused its discretion in reducing her maintenance award. CR 52.01 states that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." On appeal, the test is whether the trial court's findings are clearly erroneous or whether the trial court abused its discretion. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982). Evelyn first argues the trial court abused its discretion when it assumed facts not in evidence about the value of the 2002 Ford Taurus.

■ Prior to trial, the parties disputed the marital nature of the Taurus with Evelyn arguing that Adrian had purchased the car as a gift for her and, thus, it was not marital property within the definition of Kentucky Revised Statute (KRS) 403.190(2). Adrian disputed that the Taurus was purchased as a gift to Evelyn and, indeed, the car was titled in both parties' names. At trial, neither party testified as to the current value of the Taurus. The trial court found that Evelyn failed to meet her burden of proving that the car was her nonmarital property. Nevertheless, the car was awarded to Evelyn and assigned the $12,000.00 value listed as its NADA book value in Adrian's mandatory case disclosure.

Evelyn contends it was incumbent upon Adrian to introduce evidence of the car's value at trial, since he argued it was a marital asset. She cites CR 43.01(1), which states, "The party holding the affirmative of an issue must produce the evidence to prove it." Although she concedes that Adrian's mandatory case disclosure listed the car's NADA value as $12,000.00, Evelyn claims his failure to introduce evidence of its value at trial deprived her of the opportunity to refute this figure. Thus, she argues the burden of refuting the Taurus' supposed value of $12,000.00 never fell to her. She asks this Court to assign a value of zero dollars to the car or, in the alternative, to allow her to present evidence contradicting the value assigned by the trial court.

We disagree that Evelyn had no opportunity to refute the value contained in Adrian's mandatory case disclosure. We note, first of all, that Evelyn filed her own case disclosure and failed to assign any value to the Taurus because she contended it was her nonmarital property. Adrian's case disclosure, listing the Taurus as marital property and stating its NADA value as $12,000.00, was filed in the record on June 30, 2004. Thus, at the time of the trial, she had notice that he was characterizing the car as marital property and also of its asserted value. It appears that, instead of introducing her own evidence regarding the car's value, Evelyn relied on her ability to persuade the trial court of the car's nonmarital character. That she failed to do so does not entitle her to a second bite at the apple when she has already had sufficient opportunity to contradict Adrian's assessment of the car's value.

■ Evelyn next argues that the trial court abused its discretion by entering findings of fact and conclusions of law regarding the existence of the certificates of deposit that were clearly erroneous. At trial, Evelyn testified that Adrian had some certificates of deposit with the PRP

---

1. This action was assigned the case number 2006–CA–001155.

National Bank. She introduced records showing certificates of deposit dated August 16, 2001, with a maturation date of August 16, 2003. Evelyn claimed that Adrian deposited $83,000.00 in certificates of deposit during their marriage. She did not testify to the source of the funds, although she admitted that Adrian owned some livestock prior to their marriage. According to her own account, their income during the marriage came from Adrian's pension and social security and her own social security once she reached the age of sixty-two. In addition, Evelyn offered no proof that the certificates of deposit still existed.

Adrian testified about the amount and value of the livestock he owned before his marriage to Evelyn. He stated that all of the funds used to purchase certificates of deposit came from the sale of his nonmarital livestock. Furthermore, Adrian claimed that these investments were exhausted during the marriage. He argued that it would have been impossible for the parties to live on their limited incomes and accumulate the amount of funds used to buy certificates of deposit during their marriage. Adrian's son was also called as a witness. His testimony was consistent with Adrian's account of selling his livestock shortly after his marriage and investing the proceeds in certificates of deposit.

The trial court's order noted that no evidence had been introduced to document the current existence of the certificates of deposit. The only testimony bearing directly on that issue was Adrian's statement that the certificates of deposit no longer existed. Thus, the trial court found that it was unable to award or assign an asset whose existence was unproven.

Evelyn argues that the trial court's order ignores the uncontested proof that Adrian bought $83,000.00 in certificates of deposit in 2001. We disagree. The court's order plainly states that Evelyn offered evidence that Adrian purchased certificates of deposit in 2001; however, those certificates matured in 2003, two years before the trial in this action. At trial, Evelyn offered no proof that any certificates of deposit currently existed. Moreover, Adrian testified the proceeds from the certificates of deposit had been exhausted. On appeal, the bulk of Evelyn's argument on this issue is devoted to the evidence she presented in support of her CR 60.02 motion that Adrian had cashed out certain certificates of deposit shortly after the parties separated. In doing so, she is attempting to ignore our previous order of May 22, 2006, which specifically stated "any issues related to the order ruling on the CR 60.02 motion can only be raised on appeal if appellant files a timely Notice of Appeal from that order." As previously mentioned, Evelyn's failure to do so resulted in the dismissal of her appeal from the order denying her CR 60.02 motion. Thus, we will not consider evidence which was not before the trial court at the time of its original order. Based on the evidence introduced at trial, the trial court committed no error in refusing to assign or award certificates of deposit whose existence was unproven.

■ Finally, Evelyn argues the trial court abused its discretion when it reduced her maintenance award. Prior to the final judgment in this case, Adrian was ordered to pay Evelyn $300.00 per month *pendente lite* maintenance. Evelyn requested that she be awarded the same amount as lifetime maintenance. At trial, she adopted her previously stated living expenses of $956.00, but she also told the trial court that she was currently obliged to live with her daughter. The trial court subtracted her rent and telephone bills and determined her monthly living expenses to be $321.00. Evelyn's monthly income from

social security was $481.00, leaving her with a surplus of $160.00. Adrian's reasonable monthly living expenses were $1,500.00 and his income was $1,700.00, leaving a surplus of $200.00.

The trial court, following the guidelines in KRS 403.200, determined that Evelyn lacked sufficient property to meet her reasonable needs and was unable to support herself through employment. Further, it found Adrian was able to meet his own needs while supporting Evelyn. Although Evelyn's monthly expenses had been reduced out of necessity, the trial court only awarded her with lifetime maintenance of $100.00 per month, a $200.00 reduction from the amount of the *pendente lite* maintenance. Evelyn contends the trial court erred in setting her permanent maintenance so low that she would be dependent upon others for the means to meet her basic needs. She also claims the trial court had uncontroverted proof that Adrian possessed $83,000.00 in marital funds from cashing out certificates of deposit shortly after the parties separated. We have already noted that the only proof of the existence of these funds was presented in support of Evelyn's CR 60.02 motion, and she is unable to argue any of the issues surrounding the ruling on that motion in this appeal. She does, however, make a persuasive claim regarding the trial court's decision to reduce her maintenance to an amount that still leaves her unable to provide for herself.

"Under [KRS 403.200], the trial court has dual responsibilities: one, to make relevant findings of fact; and two, to exercise its discretion in making a determination on maintenance in light of those facts." *Perrine v. Christine*, 833 S.W.2d 825, 826 (Ky. 1992). The statute directs the trial court to consider all relevant factors in determining the amount and duration of a main-

tenance award. Specifically, the trial court is required to consider the following:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ...

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200(2). Of the six factors specifically enumerated in the statute, the trial court's order addressed only the last: Adrian's ability to meet his own needs while paying maintenance to Evelyn. KRS 403.200(2)(f).

Nowhere in this order does the trial court address the issue of Evelyn's current standard of living versus the lifestyle she shared with Adrian during their marriage. KRS 403.200(2)(c). The parties lived together as husband and wife for almost nineteen years. Both parties submitted their monthly living expenses. Evelyn's total, comprised of rent, utilities, groceries, prescriptions, insurance, and a modest sum for haircare, totaled $956.00. Her income from social security was $481.00. Adrian's monthly living expenses, including cable, maid service, $200.00 for entertainment and $320.00 for maintaining his house and property, totaled $1,962.00. His monthly

income was $1,700.00. We note that the parties had a disparity of $1,006.00 in living expenses and $1,219.00 in income each month.

Although the trial court acknowledged that Evelyn had been forced to live with her daughter because her income, including *pendente lite* maintenance, was insufficient to provide for her very modest needs, it nevertheless subtracted rent and utilities from her monthly living expenses to arrive at the figure of $321.00. The trial court apparently deemed Adrian's living expenses to be excessive because it determined his *reasonable* expenses were $1,500.00. The trial court's order concedes that Evelyn's reduction in monthly expenses is solely attributable to her inability to live on her own and her reliance on the charity of her daughter. The court then relied on that charity as a basis upon which to reduce Evelyn's permanent monthly maintenance to $100. The award of such a modest sum ensures that Evelyn will be required to depend indefinitely on the generosity of others to meet her basic need for shelter.

This Court has previously determined that "failure to award ... a sum sufficient to allow [a spouse] to meet his needs without requiring that he depend on the generosity of family and friends was plainly an abuse of discretion." *Leitsch v. Leitsch,* 839 S.W.2d 287, 289 (Ky.App.1992). Consequently, the trial court's decision to award Evelyn maintenance of only $100.00 per month, and its dependence upon the generosity of others to supplement its award, was clearly erroneous.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed in part, vacated in part, and remanded with instructions for the trial court to review the maintenance award, taking into account all of the listed factors in KRS 403.200(2).

ALL CONCUR.