RENDERED: MAY 14, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0554-MR

KEVIN NEAL                                                    CROSS-APPELLANT

v.
CROSS-APPEAL FROM MCCRACKEN CIRCUIT COURT
HONORABLE DEANNA WISE HENSCHEL, JUDGE
ACTION NO. 17-CI-00232

TONYA A. NEAL                                                 CROSS-APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, LAMBERT, AND L. THOMPSON, JUDGES.

JONES, JUDGE:  The family court division of the McCracken Circuit Court

("family court") entered findings of fact, conclusions of law, and a final decree of

dissolution of marriage in the above-styled action.  As part of the decree, the

family court awarded the Cross-Appellee, Tonya A. Neal ("Tonya"), lifetime

monthly spousal maintenance from the Cross-Appellant, Kevin Neal ("Kevin").

Tonya appealed, and Kevin filed a cross-appeal challenging the amount and

duration of the family court's lifetime spousal maintenance award to Tonya.[1]

Having reviewed the record and being otherwise sufficiently advised, we affirm

the family court's award of maintenance with respect to both amount and duration.

## I. BACKGROUND

Kevin and Tonya were married on February 3, 1993. After a lengthy

separation, Tonya filed for dissolution of the marriage on or about March 17, 2017.

On May 26, 2017, Tonya filed a motion requesting the family court to award her

temporary maintenance. In her verified motion, Tonya asserted that she was not

employed due to health issues; her only income consisted of disability. She further

explained that during the parties' twenty-four-year marriage, she was a stay at

home mother, had several major illnesses, and as a result could not maintain

employment. She stated that Kevin worked as a Procedure Writer at Absolute

Consulting, Inc., in Santa Rosa County, Florida, where he made approximately

$180,000 per year. She stated that Kevin stopped providing her support after he

---

[1] Tonya's appeal was dismissed after she failed to file a brief, leaving only the issues presented in Kevin's cross-appeal for us to decide. In addition to failing to file an appellant brief in support of her own appeal, Tonya also failed to file a cross-appellee brief in response to Kevin's cross-appeal. When the appellee does not file a brief, our Court may (1) accept the appellant's statement of facts and issues; (2) reverse the judgment if reasonably supported by the appellant's brief; or (3) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case. Kentucky Rules of Civil Procedure ("CR") 76.12(8)(c). "The decision as to how to proceed in imposing such penalties is a matter committed to our discretion." *Coblentz v. Day*, 540 S.W.3d 384, 386 (Ky. App. 2018) (quoting *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007)). The record in this case is relatively short and the issues are straightforward. Accordingly, we have elected not to impose a penalty and will proceed to review the merits of this appeal in the normal course.

obtained this employment resulting in her inability to afford her medications and treat her many health issues. Following a temporary maintenance hearing, Kevin was ordered to pay Tonya bimonthly temporary spousal maintenance in the amount of $1,700 for at least the next sixty days. Tonya's temporary maintenance was extended and increased to $4,300 per month pending final adjudication of the dissolution petition.

The family court's findings from the temporary maintenance hearing reflected that Kevin had been paying Tonya anywhere from $2,200 to over $5,000 per month for a number of years. Tonya submitted a list of expenses, many of which the family court found were excessive. This included $150 per month to have her nails professionally manicured, $242 in toiletries, $250 per month in shampoo/conditioner, and $416 per month for a clothing allowance. Her cable bill was $197 per month, and her cell phone plan cost $207 per month. Notwithstanding the unreasonableness of Tonya's claimed expenses, the family court found that Tonya's limited disability income prevented her from being able to support herself.

The family court conducted a final hearing on December 18, 2018, relative to the division of property and debts, health insurance, and spousal maintenance. Tonya testified first. She testified she is unable to work, as she is disabled. She stated she has fibromyalgia, rheumatoid arthritis, osteoarthritis,

diabetes, and a learning disability where she has an inability to concentrate. She has been receiving disability since approximately 1997. She provided no proof regarding her social security disability, though Kevin did acknowledge she receives social security disability and had complained to him over the years of widespread pain. She submitted no documentation or medical records to the court regarding her medical conditions.

Kevin earns a gross salary of approximately $165,000 per year, and has reasonable monthly expenses of approximately $4,000. Tonya is unemployed and receives $574[2] per month from Social Security Disability. Kevin testified during the marriage they both had access to a joint checking account, wherein at the end of the month, there was no accounting to see who had spent what, though he did tell her she was spending too much at various times. At some point, he began a new job, and began sending all his direct deposit paychecks into a sole checking account. He then switched to sending her a monthly payment (between $2,200 to $5,000 a month) for her expenses, which he perceived to be reasonable for her needs.

Tonya testified she incurred a substantial debt of $100,000 trying to keep up with her reasonable needs; however, she submitted no supporting

---

[2] The family court found Tonya receives $514 per month but we assume this was a typographical error since Tonya produced no evidence at trial other than her own testimony related to her social security disability.

documentation to the family court to prove her debt. She additionally testified her marital lifestyle afforded her unlimited discretionary spending.

Tonya testified she was unable to work or earn any income. However, she later admitted that she was permitted to work up to twelve hours a week; anything more would cause her to lose her disability. When pressed why she has not explored the opportunity to work from home at least up to the twelve hours, she stated when she is employed, her disability is reduced accordingly. She also testified that the nature of her illnesses made it difficult for her maintain stable employment because some days she was just not able to work. Even so, she is able to enjoy some hobbies such as floral arrangement and scrapbooking; she socializes with friends, and she frequently travels from Kentucky to Virginia to take care of her sick mother.

Since the temporary maintenance hearing, Tonya had revised her estimated monthly expenses. She testified that she has housing expenses of $650 for rent/mortgage, $60 for garbage, $20 for water and sewage, and $150 for electric. Her homeowner's insurance is $30 per month. Due to her disability, she is unable to clean or do laundry. She utilizes a maid service which costs $150 per month. She additionally rents out a storage unit, costing her $130 per month. Her cell phone plan is $207.56 per month. Her cable bill is $200. Her transportation expenses cost her over $500 per month. This includes $200 for gas and oil and

$334 for liability insurance but does not include her car payment. Her personal expenses also included over $700 a month on cosmetics and toiletries due to her sensitive skin. She testified she gets frequent pedicures because of her diabetes and the pedicures generally cost her about $300 a month. Her personal entertainment cost is $200 per month. She testified this consists of her going out to the movies with girlfriends and the like. She testified she spent substantially more on entertainment during the marriage. She also testified that she is in need of costly dental work to fix her teeth as the current state of her teeth prevent her from being able to eat many foods such as raw vegetables.

At the conclusion of the hearing, the family court stated orally from the bench that it believed Tonya was entitled to some maintenance; however, it did not accept that all, or even a majority of Tonya's claimed expenses were reasonable. It indicated that before making a final determination, it would have to go through the claimed expenses and make a determination regarding the amount of maintenance Tonya would need to meet her reasonable needs.

Following the conclusion of the hearing, the dissolution was granted by the McCracken Circuit Court and a Final Hearing Order and Findings of Fact, Conclusions of Law and Final Decree of Dissolution of Marriage was entered on January 25, 2019, *nunc pro tunc* to December 18, 2018. Therein, in relevant part, the family court found:

2. The wife is 51 years of age, unemployed, and receives $514.00 per month from her Social Security disability. The husband is 48 years of age and is employed by Absolute Consulting, earning a gross salary of approximately $165,000 per year.

3. The Court finds wife has either heavily inflated her expenses on her Financial Declarations or that her expenses are excessive. For example, she claims she requires $710.00 for cosmetics and hair supplies in addition to $400.00 per month for clothing, although she is unemployed. She requests maid service and frequent manicures/pedicures. She maintains a cell phone plan that costs $207 per month, a cable plan that costs $197 per month, and claims she has over $600 per month in car expenses, not including the car payment. The wife's claims regarding her expenses are outrageous and the Court does not find such type of claimed expenses to be either reasonable or necessary. No documentation was presented to support her high expense claims.

4. The wife testified that her lifestyle before separation allowed her unlimited discretionary spending. She also testified that she had to incur $100,000.00 of debt in order to meet her reasonable needs. She was not able to resolve the conflicting testimony. (No documentation was submitted regarding the claimed debt.)

5. While the wife claims she is unable to work and earn income in any way, she is able to participate in regular hobbies and travel long distances recurrently. The Court received no evidence that she is unable to work, and the Court finds she is able to do some work to supplement her income.

6. **Maintenance.** The wife is entitled to maintenance as she lacks sufficient property, including marital property apportioned to her, to provide for reasonable needs and she is unable to support herself through appropriate employment. The Court considered the financial

resources of both parties, both parties' reasonable monthly expenses, the standard of living during the marriage, the duration of the marriage, and the age and physical condition of the parties. The Court finds that the wife is entitled to maintenance and the husband has the ability to make the following payments, effective January 1, 2019:

a. $2,500.00 per month for a period of five years (2019-2024).

b. $2,000.00 per month for a period of five years (2024-2029)

c.  $1,500.00 per month for a period of five years (2029-2034)

d. $1000.00 per month for the remainder of wife's life.

7. **Debts.** The wife did not submit evidence regarding her claimed marital debts and the Court will only rule upon debts provided and proven to the Court. Any debt not listed specifically herein shall remain the obligation of the person currently holding the debt.

a. The husband shall be responsible for the Discover credit card (balance over $7000) and Wells Fargo Visa debts.

b. The wife shall be responsible for the alleged Lloyd & McDaniel debt, Bank of America debt, medical debt, Mastercard debt and the claimed loan from her Mother, Hilda McNutt.

8. **Bank Accounts**. The parties are awarded any sums in their respective bank accounts, checking and/or savings. The husband maintained approximately $13,500 in his Wells Fargo checking and saving account in November 2018. The wife maintained approximately $400 in her US Bank checking account at that time.

9. **Vehicles.** Vehicles currently in possession of either party are awarded to the party in possession and any debt therein associated with the vehicle shall be the responsibility of the party in possession of the vehicle. The husband has a Hyundai valued at approximately $3,100 and a Ford Escape valued at approximately $16,350. Neither vehicle has debt. The wife has a Maxima with no debt, however an estimated value was not provided to the Court.

10. To equitably resolve the awards of accounts and vehicles, the husband shall pay the wife $10,000 within 60 days of this Order.

11. **Retirement.** All retirement plans, specifically including the husband's Fidelity IRA, shall be divided equally from the date of the marriage until the date of divorce via a Qualified Domestic Relations Order. The Scottrade account shall also be divided equally. The estimated values of the accounts are $95,668 (Fidelity) and $1,643 (Scottrade).

. . . .

13. **Health Insurance.** The wife shall be responsible for obtaining her own health insurance. She has not had health insurance coverage since 2008. She was unable to provide the Court with any information or estimated costs for her potential insurance. The Court has included the wife obtaining insurance as an expense in consideration of the maintenance award.

1/25/2019 Final Hearing Order.

Kevin filed a CR[3] 59.05 motion to alter, amend, or vacate the January 25, 2019 Final Hearing Order. In his motion, Kevin asserted that (1) no maintenance should have awarded to Tonya past her retirement age; (2) the maintenance order should have included a provision terminating maintenance upon the death of either party or Tonya's remarriage; (3) the award was excessive in both its amount and duration; and (4) seeking additional findings on the amount the court considered necessary for Tonya to obtain insurance. By order entered March 25, 2019, the family court denied Kevin's motion but included in its order that the maintenance award would terminate on Tonya's cohabitation, remarriage, or death pursuant to *Combs v. Combs*, 787 S.W.2d 260 (Ky. 1990).

This appeal followed.

## II. ANALYSIS

The award of spousal maintenance "has traditionally been delegated to the sound and broad discretion of the [family] court[.]" *Barbarine v. Barbarine*, 925 S.W.2d 831, 832 (Ky. App. 1996). On appeal, this Court may only disturb the award of spousal maintenance if the family court has "abused its discretion or based its decision on findings of fact that are clearly erroneous[.]" *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003). Abuse of discretion occurs when the

---

[3] Kentucky Rules of Civil Procedure.

-10-

family court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Artrip v. Noe*, 311 S.W.3d 229, 232 (Ky. 2010).

The determination of maintenance involves a two-pronged analysis. First, the family court must decide whether the requesting spouse is even entitled to maintenance at all by examining that spouse's financial needs and resources. *Wattenberger v. Wattenberger*, 577 S.W.3d 786, 787 (Ky. App. 2019). Pursuant to KRS[4] 403.200(1), the family court may award maintenance if it finds that the spouse seeking maintenance: (a) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; and (b) is unable to support herself through appropriate employment. *McVicker v. McVicker*, 461 S.W.3d 404, 420 (Ky. App. 2015).

If, based on those factors, an award of maintenance is justified, the family court must then decide the appropriate amount and duration of the award while considering all relevant factors, including:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

---

[4] Kentucky Revised Statutes.

-11-

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200(2). "While, of course, mere lip service is insufficient, the family court is not required to render explicit findings of fact as to each relevant KRS 403.200(2) factor." *Shafizadeh v. Shafizadeh*, 444 S.W.3d 437, 446 (Ky. App. 2012) (citing *McGregor v. McGregor*, 334 S.W.3d 113, 118 (Ky. App. 2011)).

Kevin's appellate brief does not contest the fact Tonya is entitled to some spousal maintenance. The issue we must determine is whether the family court abused its discretion with respect to the amount and duration of the spousal maintenance it awarded Tonya.

Kevin's first argument is that family court erred in awarding Tonya lifetime maintenance in an amount that exceeded verifiable, reasonable expenses. Kevin notes Tonya failed to introduce sufficient evidence that her disability rendered her unable to work. This is true. In fact, the family court found that Tonya was able to do some work, despite her testimony otherwise. This does not mean, however, that it was an abuse of discretion for the family court to award her

-12-

lifetime maintenance. The fact that Tonya can perform some limited work on a part-time basis does not mean her employment prospects and earning capacity are great.

The purpose of spousal maintenance is to enable the receiving spouse to support herself to acquire the skills necessary in the current workforce so that he or she does not rely upon the maintenance indefinitely. *Powell*, 107 S.W.3d at 224. However, where the marriage was long term, the dependent spouse is near retirement age, there is a large discrepancy in incomes, or the prospects for self-sufficiency appear dismal, our Courts have declined to follow that policy and have awarded maintenance for longer periods. *Id.*

While Tonya is capable of working, "[t]he mere fact that the wife can eke out a living is not sufficient to deny maintenance." *Combs v. Combs*, 622 S.W.2d 679, 680 (Ky. App. 1981). In *Russell v. Russell*, 878 S.W.2d 24 (Ky. App. 1994), we considered a factual scenario similar to the present one. The receiving spouse received disability payments; however, the payments were not sufficient to meet her reasonable needs. We reiterated that "where one is unable due to health problems to be self-supporting, the statute is appropriately utilized to prevent the 'drastic change' in the standard of living experienced." *Id.* at 27 (quoting *Leitsch v. Leitsch*, 839 S.W.2d 287, 290 (Ky. App. 1992)).

At the time the family court entered its final hearing order, Tonya was fifty-one years old. She was unemployed. She did not work for much of the parties' lengthy marriage. She testified that her last job was at NAPA Auto Parts. Given Tonya's age, physical condition, emotional state, and employment history, it was reasonable for the family court to conclude that even if Tonya did obtain employment, it would not be sufficient to meet her needs. Moreover, the graduating reduction in the maintenance amount provides some incentive for Tonya to secure employment while at the same time recognizing that the nature of employment Tonya is able to perform will still not be likely to meet her reasonable needs. Having reviewed the record, we are confident the family court appropriately balanced Tonya's ability to work with the realistic employment prospects available to her.

We are likewise confident that the family court appropriately determined what it considered to be reasonable expenses. As noted by the family court, many of the expenses Tonya submitted were utterly and totally outrageous. Additionally, it is clear that Tonya's spending during the marriage far exceeded the resources of the parties. Nevertheless, while married to Kevin, it was entirely possible for Tonya to enjoy a comfortable lifestyle within the parties' financial means. After the divorce, Tonya's income was drastically reduced while Kevin's was not. Even though Tonya exaggerated her expenses, it does not follow that the

family court was required to discount her testimony regarding all her expenses. She still had some expenses such as housing, food, utilities, and insurance. She also testified that she was in need of expensive dental work. Having carefully reviewed the record, we cannot agree with Kevin that the family court abused its discretion with respect to the amounts awarded to Tonya. It is obvious to us that the family court went to great lengths to parse out the reasonable expenses Tonya would incur living on her own from the excessive ones she claimed were necessary and that she enjoyed during the parties' marriage.

Next, citing *Weldon v. Weldon*, 957 S.W.2d 283 (Ky. App. 1997), Kevin argues that maintenance should terminate at retirement age. We characterized the parties in Weldon as a "working couple." The wife held a master's degree in public service from Western Kentucky University and was earning $28,000 per year at the time of the parties' divorce. Both parties were in their forties. We held that under these circumstances it was an abuse of discretion to award the wife maintenance past her retirement age because at that point "the parties' income levels will be more equal since [the wife] will be entitled to half of [the husband's] pension, as he will be entitled to half of hers." *Id.* at 286.

We disagree with Kevin that *Weldon* is dispositive. While Tonya was awarded half of Kevin's retirement, approximately $50,000, unlike the wife in *Weldon*, Tonya does not have her own retirement account or the realistic prospect

-15-

of securing employment that will fund a retirement or ever equal Kevin's income. Kevin on the other hand, is forty-eight. He has several more years left to build his retirement, and his employment history indicates that he is capable of earning a six-figure salary. Thus, unlike the parties in *Weldon*, the record does not support a conclusion that Tonya's and Kevin's income levels will be more equal at retirement age obviating the need for Tonya to receive any further maintenance from Kevin.

Additionally, no proof was offered during the hearing regarding either Kevin's or Tonya's expected retirement incomes. "When the evidence regarding entitlement to and amount of future [retirement] benefits is speculative, it is better practice to enter an open-ended award that can be reduced or eliminated pursuant to KRS 403.250." *Naramore v. Naramore*, 611 S.W.3d 281, 290 (Ky. App. 2020). In light of the record, we cannot conclude that the family court abused its discretion by failing to terminate Tonya's maintenance when the parties reach retirement age.

Kevin next argues that the family court should have ordered Tonya to seek healthcare insurance through Medicare and/or Medicaid rather than continue to rely on maintenance from him to pay for private insurance. However, Tonya's eligibility for disability medical benefits does not require a reduction or elimination of maintenance. *See Calloway v. Calloway*, 832 S.W.2d 890, 894 (Ky. App.

-16-

1992). Should Tonya receive such benefits in the future, "KRS 403.250 and the civil rules provide for mechanisms by which the maintenance award can be reduced or eliminated." *Id*.

The family court's original order did not provide that Tonya's maintenance terminated on upon death, remarriage, or cohabitation. As part of his CR 59.05 motion, Kevin requested the family court to amend its order to specifically include these events of termination. Instead, the family court denied Kevin's motion stating: "The Court finds the maintenance award in the final hearing order is appropriate and that the requirements in Combs v. Combs, 787 SW2d 260 (Ky 1990) apply and that the maintenance award will terminate upon [Tonya's] cohabitation, remarriage or death."

KRS 403.250 governs the modification and automatic termination of maintenance.

> (1) Except as otherwise provided in subsection (6) of KRS 403.180, the provisions of any decree respecting maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable. The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state.
>
> (2) Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

-17-

KRS 403.250.

In *Combs, supra*, the Court held that cohabitation could serve as a ground for the termination or reduction in maintenance where the court finds that a change in circumstances is so substantial and continuing as to make the terms unconscionable as permitted by KRS 403.250(1). *Combs*, 787 S.W.2d at 262-63. However, unlike death or remarriage, cohabitation is not a ground for automatic termination pursuant to KRS 403.250(2). "If the legislature wants to make a policy decision to automatically terminate maintenance upon a recipient's cohabitation, then it should amend KRS 403.250(2) to add cohabitation as a grounds for automatic termination." *Id.* at 263. Therefore, the family court's statement in its order denying Kevin's motion to modify that the maintenance award would automatically terminate on the event of cohabitation was an overextension of *Combs*. However, irrespective of this misplaced statement, the award will automatically terminate upon death or remarriage of the receiving spouse. And, if Tonya cohabitates, while termination will not be automatic, Kevin can seek modification pursuant to KRS 403.250(2). This is in accordance with our statutes and case law and the family court did not need to modify its order to explicitly state the law in this regard.

### III. Conclusion

For the foregoing reasons, we affirm the order of the McCracken Family Court.

ALL CONCUR.

BRIEF FOR CROSS-APPELLEE:  NO BRIEF FILED FOR CROSS-APPELLANT

Bard K. Brian
Paducah, Kentucky