RENDERED: MARCH 8, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0451-MR

ANTHONY SCHICK                                          APPELLANT

v.          APPEAL FROM HARRISON FAMILY COURT
            HONORABLE HEATHER FRYMAN, JUDGE
            ACTION NO. 22-CI-00035

THERESA BROWN                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE: Anthony Schick appeals from the Harrison Family Court's

order of April 6, 2023, in this dissolution of marriage action. His arguments on

appeal relate solely to the family court's award of maintenance to his ex-wife,

Theresa Brown. Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Anthony and Theresa were married on July 5, 2002, and separated on October 15, 2021.  They have two children, who were aged eighteen and twenty at the time of the final hearing.  Anthony worked full-time during most of the marriage.  His salary provided the main source of income for the couple, and he paid the mortgage on their house.  His income was $64,704 in 2021, and $77,846 in 2022.

Theresa was a homemaker and home-schooled the children.  Theresa made "Blue Lotus Pottery," which she sold online and at art fairs and craft shows.  Anthony testified that the income from the pottery sales was more than $1,000 per year but less than $5,000.  In early 2020, the couple purchased a blue outbuilding to serve as a pottery studio for Theresa.  They placed the outbuilding on the curtilage of the property where their house was located.

The couple started a social club, the "Zombie Crawlers" for Jeep enthusiasts, and Anthony registered the name as a trademark in 2019.  He manages the Facebook Group for the club and provides expert advice to Jeep owners and fans regarding vehicle repair and maintenance.  Theresa was a booster for the group and also produced some artwork and merchandise for it, but she does not have any technical knowledge of Jeeps.  The club does not operate for profit although it has raised money for charitable purposes.

Anthony filed a petition for dissolution of marriage on March 4, 2022. At that time, Anthony was forty-three years of age and Theresa was forty-six. On September 14, 2022, they reached a mediated settlement that resolved several issues in the dissolution proceedings. Under the terms of the agreement, Anthony agreed to pay Theresa a sum equal to one-half of the equity in the marital residence in exchange for sole ownership of the property. Anthony also agreed to be solely responsible for all the debt on the property and all the credit card debt.

After the separation, Theresa moved to Michigan, where her brother allowed her to live rent-free in a house he owned, in exchange for Theresa repairing the house, which had been damaged by previous tenants. The cost of renting the property is $800 per month. Theresa has a boyfriend who stays with her five nights per week and gives her $400 per month. According to Theresa, these funds are a loan that she must pay back.

Theresa is training to be a dog groomer. She used to work fifteen hours per week at the grooming facility but recently she has been getting fewer hours. She also cleans houses. She works a total of about twenty-five hours per week. She testified that she had applied unsuccessfully for numerous jobs, including at several gas stations. She does not have a degree although she did attend college for two years. She had a real estate license before the marriage.

After the mediation but before the entry of the final decree of dissolution, Anthony decided to sell the marital home, rather than remain in it, and the parties agreed to split the proceeds. Before the sale, however, Anthony removed the blue outbuilding from the property and placed it in storage. Theresa received $31,000 for her share of the proceeds of the sale of the residence but argued that the amount would have been higher if Anthony had not removed the outbuilding from the property.

On March 27, 2023, the family court held a hearing to address the following issues, which remained unresolved by the settlement agreement: (1) the Zombie Crawlers trademark; (2) the blue outbuilding/pottery studio; (3) the purported value of vehicles owned by Anthony; (4) the income tax refund for 2021; (5) expenses incurred by Anthony for preparing the marital home for sale; and (6) Theresa's request for maintenance.

The family court found that the Zombie Crawlers trademark has no monetary value and awarded it to Anthony because he continues to have an active role in the group. He was ordered to stop using any of Theresa's artwork, including the group logo.

The court found that it was now impossible to estimate the value of the blue outbuilding Anthony removed from the property before the sale of the marital residence. The court ordered the blue outbuilding to be sold at auction and

-4-

the proceeds, minus the expenses for its storage and sale, to be divided equally between the parties. Theresa's share was estimated to be $7,500 ($6,000 after fees).

The court awarded two vehicles with nominal value to Anthony. Each party was permitted to retain any vehicle registered in their own name.

Anthony admitted that he kept the couple's entire income tax refund for 2021. The court ordered him to pay Theresa one-half of the amount of the return, $2,850.

Anthony sought to recover sales expenses and costs for preparing the marital residence for sale. The family court found no evidence that the work, such as painting part of the house, improved its value. It held that Anthony was solely responsible for the sales expenses and work on the home.

The family court found Theresa lacked training and job experience and had not worked outside the home for twenty-one years; consequently, she had limited options for employment. The family court found that Theresa's monthly living expenses of $2,051 were reasonable, leaving an annual deficit of $8,612 if she was able to earn $15,000 to $16,000 in minimum wage income. The family court noted that her rental expenses were currently being paid by her brother and recognized that there was no guarantee that this situation would continue. The court acknowledged that Theresa would be receiving a lump sum payment from

the sale of the marital home, and her pottery tools and equipment which would enable her to resume her pottery business if she wished to do so. It decided that a modest amount of maintenance, paid for a limited period of time, was appropriate to assist Theresa in her transition and to allow her to obtain some form of job training.[1] For the first year, it awarded a monthly sum of $800 or a lump sum of $9,600; for the second year, $500 per month or a lump sum of $6,000; and for the third year, $250 per month or a lump sum of $3,000.

This appeal by Anthony followed. The sole issue on appeal is the family court's award of temporary maintenance.

## STATUTORY FRAMEWORK AND STANDARD OF REVIEW

The award of maintenance is governed by Kentucky Revised Statutes (KRS) 403.200, which states that "the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

> (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
>
> (b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

---

[1] The family court ordered final periodic maintenance payments pursuant to KRS 403.200; however, in its order, it mistakenly referred to the payment as "temporary." Temporary maintenance is defined in KRS 403.160 and is awarded prior to a final decree.

KRS 403.200(1).

If the court makes such a preliminary finding, it may enter a maintenance order "in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;
>
> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and
>
> (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200(2).

"Both sections of the statute must be satisfied before the family court may award maintenance." *Shafizadeh v. Shafizadeh*, 444 S.W.3d 437, 446 (Ky. App. 2012). The award of maintenance, as well as its amount and duration, are within the sound discretion of the family court. *Gentry v. Gentry*, 798 S.W.2d 928,

937 (Ky. 1990). "When reviewing awards of maintenance, this Court will not set aside the findings of the trial court unless they are clearly erroneous." *Roper v. Roper*, 594 S.W.3d 211, 230 (Ky. App. 2019), *as modified* (Jan. 17, 2020); Kentucky Rules of Civil Procedure (CR) 52.01. A trial court's factual determination is not clearly erroneous if it is supported by substantial evidence, which is evidence of sufficient probative value to induce conviction in the minds of reasonable people. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). A family court abuses its discretion if its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Shafizadeh*, 444 S.W.3d at 446.

## ANALYSIS

On appeal, Anthony argues that (1) the family court's calculation of Theresa's income should have included the amount she was saving in rent; (2) the family court failed to consider and give sufficient weight to the amount of marital property Theresa was awarded and the funds she was receiving from her boyfriend; and (3) the family court miscalculated the amount of maintenance.

Anthony contends that the monthly amount of $800 Theresa was saving in rent in exchange for doing work on her brother's house should have been added to the calculation of her total income. If this amount is included in her monthly income, he argues that her monthly income shortfall is only $451 per month, not $718 as calculated by the family court.

In its order, the family court emphasized that the rent-free housing Theresa was receiving from her brother could end at any time. This finding was supported by Theresa's testimony that at some point her work on her brother's house would be completed and she would not be allowed to remain there indefinitely without paying rent. "[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Jones v. Livesay*, 551 S.W.3d 47, 51 (Ky. App. 2018) (citation omitted). Theresa's testimony constitutes "[e]vidence that a reasonable mind would accept as adequate to support a conclusion[.]" *Id.* (citation omitted). Indeed, this Court has expressly held that the failure to award a claimant "a sum sufficient to allow him to meet his needs without requiring that he depend on the generosity of family and friends was plainly an abuse of discretion." *Leitsch v. Leitsch*, 839 S.W.2d 287, 289 (Ky. App. 1992). The family court found Theresa's testimony about her living situation to be credible and did not abuse its discretion in not attributing $800 in monthly income to Theresa.

Next, Anthony argues that the family court abused its discretion in not considering that the amount of marital property Theresa received (approximately $40,000) would cover her monthly shortfall in income for a period of seven years. Anthony's calculations are based on two assumptions: that Theresa will continue to receive free housing from her brother for the foreseeable future, thus creating a

monthly income shortfall of only $451, and that her standard of living should be based on a minimum wage income.

We have already determined that the family court did not abuse its discretion in not assuming that Theresa would continue to live rent-free in her brother's house indefinitely. As to Anthony's assumption that Theresa should live at a minimum wage level, "it is undisputable that trial courts have wide discretion in determining the amount of maintenance and that no particular formula has ever been held as the method for establishing maintenance." *Age v. Age*, 340 S.W.3d 88, 95 (Ky. App. 2011). KRS 403.200(2)(c) specifically directs the family court to consider the parties' standard of living during the marriage. Furthermore, "[i]t has long been the law in this jurisdiction that the test to determine entitlement to maintenance set out in KRS 403.200(1) is not absolute but must be applied against the standard of living established during the marriage." *Leitsch*, 839 S.W.2d at 289. The evidence in the record shows that the couple had a comfortable standard of living. Anthony testified that his income was variable because it was based on sales commissions and totaled between $1,500 and $5,000 per month. As set forth above, his most recent tax returns showed an annual income of $64,704 in 2021, and $77,846 in 2022. In any event, the family court calculated maintenance by adding what Theresa would need to pay in rent to a minimum wage salary of $15,000 to $16,000. The family court's award of maintenance was not lavish and

-10-

not intended to allow Theresa to "dabble in hobbies" and "work at her leisure" as Anthony contends.

There is also no support for Anthony's contention that the share of marital property received by Theresa should be used solely to defray her monthly living expenses. Maintenance is intended

> to enable the unemployable spouse to acquire the skills necessary to support himself or herself in the current workforce so that he or she does not rely upon the maintenance of the working spouse indefinitely. The goal of a maintenance award is to facilitate one's transition from dependence upon her former spouse to independence.

*Daunhauer v. Daunhauer*, 295 S.W.3d 154, 156 (Ky. App. 2009) (internal quotation marks and citation omitted). The family court found that Theresa's receipt of these funds would help her gain a more stable living situation. Theresa testified that she wanted to use her share of the marital funds to save for her retirement and to pay for further education. Allowing Theresa to use the marital funds for these purposes furthers the statutory goal of maintenance and ultimately reduces her need for lengthy or permanent maintenance.

Anthony further argues that the family court failed to account for the financial assistance of approximately $400 per month Theresa receives from her boyfriend. According to Theresa, these funds were a loan she was expected to pay back. We reiterate that the family court has the unique role of judging the

credibility of the witnesses and it chose to believe these contributions were a loan, not a reliable, steady source of funds that should be included in its calculation of Theresa's income. This Court is not "authorized to substitute its own judgment for that of the trial court on the weight of the evidence[.]" *Leveridge v Leveridge*, 997 S.W.2d 1, 2 (Ky. 1999), *as corrected on denial of reh'g* (Aug. 26, 1999). Anthony further argues that because Theresa's boyfriend spends five nights per week with her, he must also be contributing to her material needs, such as food, gas, and entertainment. This argument will not be addressed here because it is purely speculative and was never raised at the hearing before the family court. "An appellate court is without authority to review issues not raised in or decided by the trial court." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (internal quotation marks and citations omitted)

Finally, Anthony argues that the amount of maintenance awarded by the court was arbitrarily based on improper calculations and does not reflect what he has calculated to be a 59 percent shortfall Theresa has in meeting her living expenses. Using this amount as the baseline, he argues that her maintenance award should be reduced by 59 percent to $328 per month in the first year, $205 per month in the second year, and $102.50 per month in the third year. Anthony's calculations are based on including $800 in monthly rent savings in Theresa's

-12-

income. As we have already determined that the family court did not err in not including this amount in her income, this argument is without merit.

## **<u>CONCLUSION</u>**

The family court's order is supported by substantial evidence in the record and is fully in accordance with the requirements of KRS 403.200 and relevant case law. Consequently, it is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

James O'Toole
Lexington, Kentucky

BRIEF FOR APPELLEE:

Emmett Daniel Clifford
Cynthiana, Kentucky